IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

***ELECTRONICALLY FILED***

| | | |
|---|---|---|
| KEVIN HORNBACK, et. al. | : | |
| | : | |
| PLAINTIFFS, | : | Civil Action No.  3:20-CV-703-RGJ |
| | : | |
| v. | : | |
| | : | |
| THOMAS CZARTORSKI, et. al. | : | |
| | : | |
| DEFENDANTS. | | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE PLAINTIFFS' EXPERT RONALD JANOTA

Come now the Defendants, Thomas Czartorski, Cameron Wright, and Kevin Dreisbach, by and through counsel, and for to their memorandum in support of their Joint Motion to Exclude the Report, Opinions, and Testimony of Plaintiffs' Expert, Ronald Janota, pursuant to Federal Rule of Evidence (hereinafter "Rule") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), hereby states as follows:

## INTRODUCTION

As this Court is aware, this lawsuit arises out of an incident that occurred on April 9, 2020 at the home of Plaintiffs, Kevin Hornback, Sonya Hornback and their son, Alex Hornback, in Shepherdsville, Kentucky in which Kentucky State Troopers Thomas Czartorski, Cameron Wright, and Kevin Dreisbach were assigned to serve a bench warrant upon Alex Hornback.  Alex Hornback resisted the arrest.  Plaintiffs subsequently instituted this action asserting allegations and claims under § 1983 for violations of the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States in relation to the April 9, 2020 events that took place at the

Hornback's home in affecting the arrest of Alex Hornback. A video from the surveillance camera in the Hornback's basement as well as dash cam footage from the Kentucky State Police captures the alleged events at issue.

In the instant motion, Defendants seek to exclude, or alternatively, to significantly limit the Plaintiffs' Expert's report, opinion, and testimony pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

### Proffered Opinions and Testimony of Ronald Janota

Plaintiffs disclosed Ronald Janota, Expert Witness & Law Enforcement Management and Consultant, as an expert witness in this matter. *See* Plaintiffs' Expert Disclosure attached hereto as **Exhibit 1**. Janota provides the following four opinions in his report:

> Opinion #1 The physical force used by Troopers Czartorski and Wright during the arrest of Alex Hornback was not justified and does not conform to the industry standards and policies for proper police conduct.

> Opinion #2 Troopers Wright and Czartorski committed perjury and failed to tell the truth regarding the arrest of Alex Hornback.

> Opinion #3 Troopers Wright and Czartorski violated the Kentucky State Police policies of, "Response to Resistance", General Order OM-B-4, and "Response to Resistance: Reporting, Investigation, and review", General Order OM-B-4a. The inappropriate use of force By Wright and Czartorski does not conform to proper industry standards in the field of law enforcement.

> Opinion #4 Kevin Hornback recorded some of the arrest of Alex in the basement of his own home with his cellphone. The cellphone was seized by one of the three Troopers. The recording was deleted. Seizing Kevin Hornback's cellphone and deleting the video violated his Constitutional rights.

*Id.*

Janota presented for a deposition via *Zoom* on March 11, 2022. *See* deposition transcript of Ronald Janota hereinafter "Janota depo" attached hereto as **Exhibit 2**. He testified regarding his

*curriculum vitae*, including sections with his report describing or articulating his various qualifications and experiences. *Id.* at 21-22. Janota began consulting services and law enforcement expert work in approximately 2000. *Id* at 24. He has testified at one other federal trial in 2005. *Id.* Janota testified that he regularly refers to the International Association of Chiefs of Police as "somewhat of the national standard with their policies and procedures, that many, almost all law enforcement agencies plagiarize and use as their policies and procedures. So it's really kind of the foundation for industry standards in the law enforcement industry." *Id.* at 27. He further identified CALEA as an accreditation agency to examine department evidence vaults and policies and procedures, but Janota disagreed with defense expert, Dr. William Gaut, that CALEA can serve as industry standards for law enforcement agencies. *Id.* at 28-29, 30. Janota also provided in his report that he referenced General Order OM-B-4 from the Kentucky State Police in formulating his opinions. *Id.* at 33; *see also* Exhibit 1. He testified that he reviewed the 12 categories of documents listed in his report, the National Census Policy, Alex Hornback's criminal history, and defense expert's deposition. Janota depo at 40.

Janota testified that he was generally aware of Alex Hornback's criminal history, but he was not aware of any incident or charge involving Alex Hornback where he was accused of fleeing and evading the police. *Id.* at 36-37. However, Janota testified that he believed that Alex Hornback's criminal history has very little bearing on this case "[b]ecause the actions of the police officers is the big question here as far as use-of-force." *Id.* Janota maintained that the fact that Alex Hornback had previously been charged with a crime of fleeing and evading police has no bearing on any opinion he arrived at in this case despite it being in the very referenced material that he allegedly relied upon. *Id.* at 38. He also testified that although the actions of the Troopers are at issue in this case, he had no idea what the Troopers affecting the arrest of Alex Hornback knew

before proceeding to enter the Hornback residence, which did include a review of Hornback's criminal history and prior fleeing and evading police charges. *Id.*

Janota does not dispute the legal standard by which the conduct of the Troopers is assessed. *Id.* at 41. Repeatedly throughout his deposition Janota would not answer the question posed, but would simply refer back to the his declaration that Alex Hornback was not resisting the Troopers in any way, and summarily conclude that any force utilized by the Troopers was therefore excessive. For example:

> Q: All right. You don't dispute, given the video, and I think that you said you thought it was about approximately two minutes, that there were split second decisions that were being made in the Hornback's basement regarding the arrest of Alex and use-of-force?
>
> A: Well, there's always decisions, I would not consider this as critical split-second decisions, no.
>
> Q: Why not?
>
> A: Because, number one, -- number one, Kevin was not resisting and there was no need for split-second decisions.

*Id.* at 43.

Janota acknowledged that Troopers Wright, Czartorski, and Driesbach went to the Hornback residence on April 9, 2020 to serve a bench warrant on Alex Hornback. *Id.* at 47. The Troopers had a valid arrest warrant and had been informed by Alex's parents, Kevin and Sonya Hornback, that Alex was inside the residence. *Id.* at 49. Trooper Dreisbach proceeded to the back of the house to prevent a person presented with a valid arrest warrant from escaping per standard operating procedure. *Id.* at 51. Janota reviewed the footage from the Hornback's basement surveillance camera of the alleged incident. *Id.* at 54. There is no audio on the video. The relevant portion of the surveillance footage, the interaction in the basement where Alex Hornback is arrested and taken into custody, all occurs within 73 seconds. *Id.* at 59.

4

Janota acknowledged that it appeared from the footage that Troopers Wright and Czatorski tell Alex Hornback to get up against the wall. *Id.* at 64. At 49 seconds Alex Hornback has his back to the wall, and then at 51 seconds begins to turn around to face the wall. *Id.* at 64-65. Janota confirmed that we do not specifically know what the Troopers said to Hornback from the video as there is no audio. *Id.* At 52 seconds, Alex Hornback appears to place his hands on the wall. *Id.* at 66. Janota testified that prior to Trooper Wright's take down of Alex Hornback, Alex did not have both hands on the wall at all times and turned back toward Trooper Wright. *Id.* at 111-12, 13. Hornback can then be seen sliding his left hand over and grasping the corner of the wall. *Id.* at 68. Janota disagreed that this could amount to resisting arrest, although he acknowledged that tensing the muscles of the body up may possibly be resistance. *Id.* at 69-70. Janota testified that he had no way of knowing whether Alex Hornback tensed his body, and therefore, could have been resisting the officers. *Id.* at 82-83. Janota did not believe Alex Hornback used his left hand to prevent from being pulled off the wall, despite such being depicted on the video footage. *Id.* at 72. Janota's report also provides that Trooper Wright choked Alex Hornback in affecting his arrest; however, he then testified that he could not ascertain one way or the other in reviewing the footage if he was choked in the manner in which he could not breathe. *Id.* at 97-98. Janota acknowledged in his testimony that Alex Hornback was not fully prone when Trooper Czartorski first struck him with the flash light. *Id.* at 143-44. Mere seconds go by as Troopers Wright and Czartorksi attempt to subdue the resisting subject. *Id.* 143-48.

At 57 seconds, Sonya Hornback, Alex's mother, begins to interfere with the situation. *Id.* at 75. She was pushed back by Trooper Czartorksi and then had to be restrained by her husband. *Id.* at 76. Due to her behavior, Trooper Wright drew his Taser on Sonya Hornback. *Id.* at 77. Sonya Hornback can be seen standing over the legs of Alex Hornback, clearly interfering with the

Troopers' action. *Id.* at 147-48. Trooper Czartorski is directing Sonya away from the arrest area and she does not follow his directive. *Id.* at 151-52. Despite the video evidence, Janota disagreed that Sonya's behavior escalated the situation. *Id.* at 77-78. However, he later admitted that her actions interfered with what the Troopers' task. *Id.* at 148. Following frame by frame review of the arrest footage, Janota admits that pursuant to the standard in the consensus policy discussion paper on use-of-force, Sonya Hornback's interference and escalation would fit within the definition of "exigent circumstances." *Id.* at 157-59.

Janota admittedly did not review any specific or relevant Kentucky State Police policy that would preclude the use of a Maglite flashlight as an impact weapon. *Id.* at 90.  His reasoning generally for not knowing any applicable policies of the Kentucky State Police was that "we must always go back to the point that this man was not resisting" *Id.* at 89. He testified:

> Q: What did you do to determine whether or not the Kentucky State Police had a general order to instruct its troopers whether or not to use a Maglite flashlight as an impact weapon on a individual who may be resisting arrest?
>
> A: I did nothing because he was not resisting arrest.

*Id.* Janota did not know if there was any Kentucky State Police policy that requires de-escalation before the use of an impact weapon despite his opinion that the Troopers should have employed such techniques to a compliant suspect.  *Id.* at 91-2. Furthermore, the materials Janota allegedly relies upon also provide that de-escalation may not be appropriate in all circumstances. *Id.* at 93. He also testified that he would have to presume that all of the Defendant Troopers were trained and met mandated qualifications by the State because he did not inquire into their specific training or qualifications. *Id.* at 119. He could not say whether Kentucky State Troopers receive non-lethal force training, training on take-down maneuvers, pressure-point training, or pain compliance training. *Id.* at 121, 27-28.  In his experience, officers are trained on the use of impact weapons,

6

but again, he did not consider or rely upon any specific training provided by Kentucky State Police to the Troopers involved. *See id.* at 131.

Janota is also of the opinion that the alleged seizing of the Hornback's phone and deleting a video was a violation of the Plaintiffs' Constitutional rights. Exhibit 1. However, in his deposition, he also acknowledged that violation of a Constitutional right is generally adjudicated by a jury or judge, and that he cannot offer expert opinions that are legal conclusions. Janota depo at 105. Further, he testified that he was not aware of what happened among the parties from the time they left the frame of the basement video camera to the time they reentered the frame of this dashboard camera. *Id.* at 163-64. Janota also confirmed that he did not have any affirmative knowledge that Trooper Czartorski had anything to do with seizing a phone and deleting video. *Id.* at 104.

Janota's report further provided that one of his opinions was that Troopers Wright and Czartorski committed perjury. Exhibit 1. Janota testified that in rendering his opinion, he was not referring to the criminal perjury case against the Troopers, but that he was just generally referring to the fact that they were not truthful in their depositions. Janota depo at 108. Nevertheless, Janota agreed that whether the Troopers did in fact lie in their depositions is not definitive of whether or not excessive force was used on April 9, 2020. *Id.* at 108-09.

## ARGUMENT

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court "established guidelines for district courts to use in determining the admissibility of expert testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). The Sixth Circuit has found that although "*Daubert* dealt with scientific experts, its language relative to the 'gatekeeper'

function of federal judges is applicable to all expert testimony offered under Rule 702." Thus, under the Federal Rules of Evidence, "'the trial judge must ensure that any and all ... testimony or evidence admitted is not only relevant, but reliable.' " *Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*, 920 F. Supp. 732, 737 (E.D. Ky. 1996) (citing *U.S. v. Thomas*, 74 F.3d 676, 681 (6th Cir.1996) *abrogated on other grounds by Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 515 n. 4 (6th Cir.1998)). This requirement "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. This test has also been applied to non-scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (the *Daubert* factors may apply to the testimony of other experts who are not scientists). If the Court decides that the expert testimony is both reliable and relevant, then the Court must also determine if the probative value of the expert testimony is outweighed by its prejudicial effect. *Daubert*, 509 U.S. at 595; *see also*, *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004).

In § 1983 police misconduct cases, the Sixth Circuit has held that a properly credentialed expert may testify "concerning a discrete area of police practices about which he ha[s] specialized knowledge," such as the use of excessive force. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908–09 (6th Cir. 2004) (approving of a criminology professor's testimony about "the continuum of force employed by officers generally, the specific training the Officers received, and [his] opinion that if the witnesses' testimony is credited, the Officers' actions violated nationally recognized police standards governing excessive force."); *see, e.g.*, *King v. Taylor*, No. 10-96-KSF, 2013 WL 1914512, at *3 (E.D. Ky. May 8, 2013) (finding a state police lieutenant qualified

to testify on KSP police procedures and training based on, primarily, his ten years of experience in the field and as an instructor).

**Janota's Opinion #1 that the force used by Troopers Czartorski and Wright was not justified is conclusory**

Mr. Janota's expert report sets forth the following opinion and a brief statement in support:

> Opinion #1 The physical force used by Troopers Czartorski and Wright during the arrest of Alex Hornback was not justified and does not conform to the industry standards and policies for proper police conduct.

*See* Exhibit 1.

Janota's Opinion #1 and testimony relating thereto provides the ultimate legal conclusion entrusted to the jury and must be excluded. *See Alvarado v. Oakland Co.*, 809 F.Supp.2d 680, 690–91 (E.D. Mich. 2011)(expert may testify regarding nationally recognized police standards governing the use of excessive force, as well as the specific departmental excessive force guidelines to which the officer was subject, but could not opine as to whether the officer's conduct in arresting the arrestee was unreasonable or unjustified under those guidelines or practices); *United States v. Eberle*, 2008 WL 4858438 at *3 (E.D.Mich., Nov. 10, 2008) (expert witnesses would be precluded from expressing a legal conclusion as to the ultimate issue of whether defendant's conduct amounted to "excessive force," but would be permitted to offer testimony as to specific issues, including: 1) the continuum of force employed by officers generally; 2) the specific training that officers receive; 3) whether defendant's conduct violated specific police standards or practices; and 4) opinions as to whether specific actions taken by defendant were warranted under the circumstances presented); *Norman v. City of Lorain*, 2006 WL 5249725 at *3 (N.D. Ohio, Nov. 27, 2006)(expert may testify concerning proper procedures to be followed in the situation facing the officer, but may not testify that the force used by the officer was

"unreasonable" or "unnecessary" or otherwise express any legal conclusions while testifying); *see also DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418, 426 (6th Cir. 2006)(expert's conclusions that it was "objectively unreasonable" for the officer to shoot the suspect; that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that [the suspect] posed a significant threat of death or serious physical injury to the officer or others"; and the use of deadly force by the officer was "improper and unnecessary" were improper legal conclusions). Mr. Janota must be precluded from expressing opinions that embrace the actual legal conclusion that the jury is asked to decide in this case, *i.e.* whether the Troopers' conduct in affecting Alex Hornback's arrest on the evening in question was unreasonable under the totality of circumstances known to the Troopers at the time.

Furthermore, the reliability and evidentiary foundation for Mr. Janota's conclusions is lacking, and therefore, his opinions are inherently unsound. An expert witness may resolve factual disputes in favor of one side, but there still must be some basic, reliable, evidentiary foundation for the opinions. Here, there is none.

**Janota's Opinion #1 that the force used by Troopers Czartorski and Wright was not justified lacks a reliable and evidentiary foundation**

Mr. Janota references the appropriate legal standard for consideration of the reasonableness of the amount of force necessary in a particular situation in his report, *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), but this is obviously not the standard by which he assesses the actions of the Troopers as he summarily concludes that Alex Hornback was calm, compliant and followed instructions from the officers, and therefore, any amount of force utilized by the Troopers was not justified. *See* Exhibit 1. To be admissible, Mr. Janota's conclusions must reliably apply the relevant principles to the facts.  If the Troopers acted reasonably, then the Hornbacks' rights were not violated. Mr. Janota's report provides that he relied upon the security

video from the Hornback's basement. *Id.* The video has no audio component to it, but the Court must give the video in this matter fair due. The entirety of the incident from when the Troopers entered the basement until Alex Hornback was secured in handcuffs and escorted from the basement lasted approximately 73 chaotic and unpredictable seconds. Janota depo at 59. The footage also demonstrates that the basement and stairwell leading to it were not well-lit as Czartorski had his flashlight drawn as they entered.  Mr. Janota's opinion does not reference the presence and interference of Sonya Hornback during the incident in his report. In his deposition, however, Mr. Janota acknowledges that Sonya's behavior drew the attention of Trooper Czartorski, Trooper Wright ultimately drew his taser on her, and she had to be restrained by her husband in the course of the arrest. *See* Janota depo at 77-78. As it is depicted on the basement footage, Sonya repeatedly failed to comply with the officer's instructions to back away. Further, neither the Hornback's home nor Kevin or Sonya had been frisked or searched for weapons prior to the confrontation with Alex, who the Troopers knew had a criminal history involving violent crimes and fleeing from police. Mr. Janota agreed in his deposition that Sonya interfered in the Troopers' arrest of Alex Hornback to the point where it could be considered exigent circumstances, yet this circumstance is not accounted for in his opinion. *Id.* at 148-49, 157-59; *see also* Exhibit 1.

**Janota has no factual basis to support Opinion #1**

Moreover, Mr. Janota admits that he has no evidentiary basis to conclude that Alex Hornback was not resisting arrest.  Mr. Janota describes in his report: Trooper "Wright describes Alex as grabbing the wall, as if Alex was firmly entrenched holding onto the wall." *See* Exhibit 1. Mr. Janota also testified that a person tensing themselves when an officer is attempting to affect an arrest could equate to resisting arrest; nevertheless, Mr. Janota admitted that he did not know whether Alex Hornback tensed himself in the instant matter:

Q: Okay. Let me ask you this: If the troopers believed that he was tensing up, do you think under the reasonable officer standard -- you have to assume that fact, okay? You have to assume that Trooper Czartorski and Wright believed he was tensing up, would a reasonable officer placed back into that scenario believe that he was resisting arrest?

A: It's possible.

Janota depo at 86.

[...]

Q: Do you know whether or not [Alex] tensed up any ·muscles in his body?

A: Have no way of knowing that.

Q: It -- but isn't it true that someone tensing up when an officer's trying to affect arrest can equate to resisting?

A: Yes.

Q: So you don't know that?

A: I don't know if he tensed up or not.

*Id.* at 82-83.

Mr. Janota's opinion that Alex Hornback was not resisting arrest, and therefore any conduct of the Troopers was unjustified, in addition to being conclusory, is also based upon an erroneous factual assumption. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Boyer v. Shirley*, No. 6:18-CV-90-REW, 2020 WL 6785940, at *7 (E.D. Ky. Nov. 18, 2020) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008)). Expert conclusions expressly founded upon incorrect factual assumptions would be inherently unreliable. *Id.* (citing *Rose v. Truck Centers, Inc.*, 388 F. App'x 528, 535 (6th Cir. 2010) ("Expert testimony may not be based on mere speculation, and

12

assumptions must be supported by evidence in the record.") (citation omitted)).   As Mr. Janota

cannot affirmatively testify that Alex Hornback was not entrenching himself against the wall or

tensing or clenching his body to resist his arrest, his opinion stating otherwise is clearly unfounded.

The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"

*Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (citing Rule 702 advisory

committee's note). Mr. Janota is unable to set forth the basis or reasoning behind his opinion that

Alex Hornback was not resisting arrest, and therefore any use of force was excessive, either in his

report or in his testimony.  Such opinions must be excluded.

**Janota's Opinion #1 fails to consider relevant Kentucky State Police Policies and Training**

Mr. Janota also failed to consider in support of his opinion, any potentially relevant

Kentucky State Police policies.  *See King v. Taylor*, 944 F. Supp. 2d 548, 556 (E.D. Ky. 2013) (the

Court found expert's testimony regarding KSP's policies and procedures helpful to a jury

considering whether Trooper's actions toward the suspect were "objectively reasonable" in light

of the facts and circumstances confronting him."). He did not confer or rely upon the Kentucky

State Police policy manual in formulating his opinions. Janota depo at 88, 90, 92, and 93. Likewise,

Mr. Janota did not inquire into or consider the training of any of the Troopers involved.

> Q: To your knowledge, is there any policy within the Kentucky State
> Police's policies that preclude the use of a Maglite flashlight as an
> impact weapon?
>
> A: I don't know what the policy is on that.

*Id.* at 87.

> [...]
>
> Q· · [...] As you sit here today, having authored two reports in this
> matter that have been produced to me as counsel for [...] Tom
> Czartorski, you are not aware of any policy that precludes a trooper

> with the Kentucky State Police using a flashlight as an impact weapon for non-lethal force, yes or no?
>
> A· · No.

*Id.* at 89.

> [...]
>
> Q· · What did you do to determine whether or not the Kentucky State Police had a general order to instruct its troopers whether or not to use a Maglite flashlight as an impact weapon on an individual who may be resisting arrest?
>
> A· · I did nothing because [Alex] was not resisting arrest.

*Id.* at 90. Mr. Janota was also equally uninformed of minimum training requirements of Kentucky

State Troopers or the training received by any of the Troopers involved in this case.

> Q: Okay. Do you know what the Kentucky State Police minimum training requirements are for a roadway trooper or a brand-new trooper?
>
> A: No.

*Id.* at 119

> [...]
>
> Q: So fair to say you don't know then if Kentucky troopers receive non-lethal force training and the use of impact weapons?
>
> A: I do not know.
>
> Q: Okay. So then it's fair to say you have -- you don't know whether or not Kentucky State Troopers have trained on take down maneuvers?
>
> A: Same answer, I don't know.

*Id.* at 121.

> [...]
>
> Q: So you don't know really anything about the training of any of these troopers?

14

A: I don't know what they received, no.

*Id.* at 122.

Similarly, Mr. Janota also plainly testified that he did not know whether Kentucky State Police uses or requires pressure point training, training on pain compliance, or de-escalation techniques before use of an impact weapon. *Id.* at 91-92, 127, 129.  And despite his opinion that Alex Hornback was calm and not resisting arrest, Mr. Janota testified that the Troopers absolutely should have employed de-escalation techniques in this case. *Id.* at 92.  Yet, Mr. Janota also acknowledged in his testimony that there is was no industry standard for this very scenario or de-escalation tactics, but it might be in the Troopers' policy manual. *Id.* at 117. Mr. Janota claims that he looks to national and industry standards on what are acceptable and unacceptable practices; however, there is only general reference to broad categories of such documents and no specific application of such to these facts.

**Janota did not consider the Troopers' knowledge prior to the subject incident**

Mr. Janota further testified that he had no idea what the Troopers' knowledge was prior to the night of the incident at issue. *Id.* at 38. Yet, the "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397, 109 S.Ct. 1865 (citations omitted). Mr. Janota testified:

> Q: So the fact that Mr. Alex Hornback has previously been charged with a crime of fleeing and evading police has no bearing on any opinion you've come to in this case despite it being in the very referenced material that you relied upon?

15

> A: Correct.
>
> Q: Okay. Do you have any knowledge based upon your review that any of the three troopers involved in this matter were aware that Mr. Hornback had been charged with fleeing and evading prior to the particular night of this incident?
>
> A: I have no idea what their knowledge was.
>
> Q: Were you aware that they went to their vehicle to look up the arrest history of Mr. Hornback before -- before proceeding to enter the Hornback residence?
>
> A: No.

Janota depo at 38.

It is the details of the officers' conduct, police policies, procedures, and practices, and police training that Mr. Janota admittedly did not review or consider as the foundation of his opinions in this matter that would be helpful to the jury in supplying them with standards with which they are unlikely to be unfamiliar and opinion testimony about whether particular conduct comports with those standards. *See Boerste v. Ellis, LLC*, No. 317CV00298BJBCHL, 2021 WL 6101678, at *7 (W.D. Ky. Sept. 29, 2021), report and recommendation adopted, No. 3:17-CV-298-BJB-CHL, 2021 WL 5449003 (W.D. Ky. Nov. 22, 2021) (expert testimony excluded except to the extent testimony regarded alleged non-compliance with the local Police Department Policies specified in expert opinion.). Mr. Janota's conclusory opinion that Alex Hornback was compliant does nothing to assist the jury in understanding the reasonableness or unreasonableness of the conduct of the officers. Mr. Janota's testimony is not helpful to a jury considering whether the Troopers' actions toward Hornback were "objectively reasonable" in light of the facts and circumstances confronting them as he did not consult any relevant or applicable KSP policies and procedures pursuant to which the Troopers were trained. Mr. Janota's opinion merely tells jurors

what result to reach without a reliable application of relevant principles to the facts. For these reasons, Opinion #1 and testimony relating thereto must be excluded.

**Jonata's Opinion #2 is irrelevant to assist the trier of fact in determining Fourth Amendment force contours**

For his second expert opinion, Mr. Janota's report provides the following:

> Opinion #2 Troopers Wright and Czartorski committed perjury and failed to tell the truth regarding the arrest of Alex Hornback.

*See* Exhibit 1. "Expert testimony is relevant under Rule 702 and *Daubert* if it will assist the trier of fact to better understand the evidence or to decide a material fact in issue." *United States v. Gallion*, 257 F.R.D. 141, 150 (E.D. Ky. 2009). The definition of relevance as provided by FRE 401 is: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401. "The Rules' basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587, 113 S.Ct. 2786.

Janota's Opinion #2 is not relevant to the issues surrounding the Defendants' use of force during the arrest of Alex Hornback. It is therefore unhelpful to the jury in deciding the issues at hand. It is undisputed that whether Defendants committed perjury is not at issue in this matter. Further, Janota readily admits in his deposition testimony that being untruthful during a deposition (assuming such occurred for the sake of argument) is separate and has nothing to do with whether excessive force was utilized during the events of April 9th. He testified:

> Q: Okay. The -- your opinion that he generally perjured himself in the deposition has nothing to do with whether or not he used excessive force from an objective, reasonable standard, would you agree with that?
>
> A: Yes, they're two separate things.

Q: Right. I mean, him lying in a deposition, assuming that he did, has no -- is not definitive of whether or not he used excessive force the night of April 9th.

A: They're two different things.

Q: Right. Perjury does not equal excessive force?

A: No.

Janota depo at 108-09.

[...]

Q: The fact that the troopers allegedly lied under oath during their depositions does not equate to excessive force or civil rights violations, correct?

A: Correct.

*Id.* at 111. "The relevancy bar is low, demanding only that the evidence logically advances a material aspect of the proposing party's case." *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017) (quotation marks omitted). However, allowing such opinions regarding the alleged perjury of the Defendants to be mentioned would only confuse the jury as it is irrelevant to the ultimate issue at hand regarding the amount of force exerted against Alex Hornback.

**Janota's Opinion #2 that Troopers Wright and Czartoski committed perjury is an improper legal conclusion**

Assuming arguendo that Jonata's Opinion #2 and testimony relating thereto were deemed relevant, it contains several impermissible legal conclusions with a potentially prejudicial effect that substantially outweighs any probative value.  Mr. Janota testified that he was aware that Mr. Czartoski had a criminal charge pending for perjury; however, claimed that was not what he was referring to in his report. Janota depo at 108.

"Courts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact." *Champion v. Outlook*

18

*Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). However, courts must ensure that police expert testimony focuses on facts rather than legal conclusions. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important."); *see also DeMerrell v. City of Cheboygan*, 206 Fed. App'x 418, 426 (6th Cir. 2006) (finding a police use of force expert opinion improper when the expert described an officer's actions as "objectively unreasonable" and "improper and unnecessary" because those were legal conclusions).

Mr. Janota's Opinion #2 improperly states a legal conclusion that Defendants Wright and Czartorski committed perjury. There has been no jury finding, plea of guilty, or final disposition of the pending criminal perjury matter against the Troopers, and therefore, the opinion is speculative as well as conclusory. *See Rose*, 388 F. App'x at 535. Notwithstanding, even if the perjury matter was resolved in some manner, Janota's opinion on same remains improper. Mr. Janota admitted in his deposition that he could not state the legal definition of perjury, had never charged anyone with perjury, and plainly testified that whether or not the Defendants perjured themselves was immaterial to whether excessive force was used against Alex Hornback. Janota depo at 105-107. Additionally, it is improper for Janota to opine and testify regarding who he believes is a credible witness and whose testimony he believes. *Womack v. Conley*, No. 4:11-CV-00039-TBR, 2013 WL 5970418, at *4 (W.D. Ky. Nov. 8, 2013) ("The Court will also not permit testimony as to who he believes is credible or what side of the story he believes is the truth."). Weighing the credibility of witnesses is and has always been within the province of the jury. *Id.* Certainly, such opinions and testimony are highly prejudicial to the Defendants as it could easily

cause a jury to base its decision on something other than the established propositions in the case

and material facts at issue, especially if it were enter the case from the mouth of an expert.

**Janota's Opinion #3 that Defendants violated the Kentucky State Police policies of, "Response to Resistance", General Order OM-B-4, and "Response to Resistance: Reporting, Investigation, and Review", General Order OM-B-4a is irrelevant and conclusory**

Next, Janota provides the following opinion in his report:

> Opinion #3 Troopers Wright and Czartorski violated the Kentucky State Police policies of, "Response to Resistance", General Order OM-B-4, and "Response to Resistance: Reporting, Investigation, and review", General Order OM-B-4a. The inappropriate use of force By Wright and Czartorski does not conform to proper industry standards in the field of law enforcement.

*See* Exhibit 1. As grounds to support this opinion, Janota provides: "Czartorski states in his

deposition, to his knowledge, no Response to Resistance report was completed. Since no Response

to Resistance report was completed or reported, the egregious physical force used by Czartorski

and Wright during the arrest of Alex is not authorized. The Kentucky State Police failure to

discipline their officers condones unwanted behavior." *Id.* Such an opinion and related testimony

is irrelevant to the issue at hand and will not assist the trier of fact in determining the

reasonableness of the conduct of the Troopers during the arrest of Alex Hornback. It must be

excluded. Moreover, a violation of a General Order is not *per se* a constitutional violation. *Smith*

*v. Freland*, 954 F.2d 343, 347–48 (6th Cir.1992). Under § 1983, the issue is whether the Troopers

violated the Constitution, not whether they completed a Response to Resistance Report or should

be disciplined by their police force.  Similarly to Janota's perjury opinion, which does not equate

to use of excessive force, failure to complete a reporting requirement does not admit that such a

use of force was not authorized pursuant to § 1983. Further, Mr. Janota refers generally to the

International Association of Chiefs of Police, the National Consensus Policy and Discussion Paper

on Use of Force, but in no manner does he explain how these policies apply to the specific conduct

at issue in the instant matter other than to conclude "[t]he inappropriate use of force By Wright and Czartorski does not conform to proper industry standards in the field of law enforcement." This is again improper expert testimony as it states a legal conclusion. *See Berry*, 25 F.3d at 1353.

**Janota's Opinion #4 that Defendants violated Plaintiffs' Constitutional rights is an improper legal conclusion**

> Opinion #4 Kevin Hornback recorded some of the arrest of Alex in the basement of his own home with his cellphone. The cellphone was seized by one of the three Troopers. The recording was deleted. Seizing Kevin Hornback's cellphone and deleting the video violated his Constitutional rights.

See Exhibit 1.

The Court cannot allow Mr. Janota to testify to anything that will ultimately be a question of law or a jury question, such as whether the Plaintiffs' constitutional rights were violated. *Womack v. Conley*, No. 4:11-CV-00039-TBR, 2013 WL 5970418, at *4 (W.D. Ky. Nov. 8, 2013) (citing *Damiani v. Momme*, 2012 WL 1657920, *2 (E.D. Pa. May 11, 2012) ("Nonetheless, to allow [the expert] to offer his opinion that the officers' conduct was unnecessary, punitive, and abusive answers the very question tasked to the jury, and the Court will not permit an expert to invade the province of the jury")). This opinion and testimony relating thereto will not assist the trier of fact, and improperly invades the jury's province as the ultimate fact finder as it tells them the result to reach. An expert cannot provide testimony amounting to a legal conclusion, such as offering an opinion that a Trooper's actions were constitutional, as "[i]t is not for the witnesses to instruct the jury as to the applicable principles of law, but for the judge." *King v. Taylor*, 944 F. Supp. 2d 548, 557 (E.D. Ky. 2013) (citing *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984)(citation omitted)).

> Q: Okay. And certainly in that sentence, "The recording was deleted. Seizing Kevin Hornback's cell phone and deleting the video violated his Constitutional rights." And you said, "I'm not a lawyer.·

I'm not a judge." I'm sure you didn't go to law school, right? You
didn't go to law school did you?

A: Absolutely not.

Q: Okay. I believe that's a legal opinion. How can you, as a police
expert, say that the seizing of the cell phone and deleting of the video
was a "Violated his Constitutional rights?"

A: It's in my opinion, I mean ... I understand the –

Q: Okay. Now let's –

A: -- I do understand Constitutional rights and the aspects of it, yes.

Q: Sure, I understand. But that's – that's a very definitive statement.
A violation of a Constitutional right is generally adjudicated by a
jury or judge if it's a bench trial and –

A: I agree. I agree.

Janota depo at 104-105. Indeed, the Sixth Circuit has held under Federal Rule of Evidence 704(a)

that such testimony by an expert is improper. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th

Cir. 1994). In *Berry*, the Court held that "[w]hen the rules speak of an expert's testimony

embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to

the ultimate issue or that give the jury all the information from which it can draw inferences as to

the ultimate issue." *Id.* (emphasis added).

<u>**CONCLUSION**</u>

Janota's expert report fails to consider all relevant facts, police practices, and police

training, and specify what the relevant and applicable standards are—either by way of direct

citation to nationally recognized industry standards or based on his own experience—and what

specific conduct of the Troopers comports or fails to comport with same.  His opinions are simply

conclusory, are based upon incomplete and incorrect factual assumptions, lack any stated rationale

and evidentiary foundation, and thus, are inherently unreliable. What little, if any, probative value

Janota's opinions provide is substantially outweighed by the danger of undue prejudice to the Defendants, as well as confusing and misleading the jury. For the foregoing reasons, Defendants hereby respectfully request that this Court sustain its motion to exclude, and alternatively, significantly limit the report and testimony of Plaintiffs' expert, Ronald Janota.

Respectfully submitted,

WARD HOCKER & THORNTON, PLLC
333 West Vine Street, Suite 1100
Lexington, KY 40507
(859) 422-6000
jason.morgan@whtlaw.com

*/s/ Jason S. Morgan*
JASON S. MORGAN
*Attorney for Defendant Czartorski*

AND

COMMONWEALTH COUNSEL GROUP, PLLC
10343 Linn Station Road, Suite 100
Louisville, KY 40223
(502) 805-2303
parker@ccgattorneys.com
greg@ccgattorneys.com

*/s/ Parker M. Wornall*
PARKER M. WORNALL
GREGORY A. HEALY
*Attorney for Defendants Wright and Dreisbach*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April, 2022, a true and correct copy of the foregoing was served via electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Christopher D. Wiest, Esq.
Chris Wiest, Attorney at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Thomas B. Bruns, Esq.
Bruns, Connell, Vollmer, Armstrong
4750 Ashwood Dr., Suite 200
Cincinnati, OH 45241
tburns@bcvalaw.com

Parker M. Wornall, Esq.
Gregory A. Healey, Esq.
Commonwealth Counsel Group, PLLC
10343 Linn Station Road, Suite 100
Louisville, KY 40223
greg@ccgattorneys.com
parker@ccgattorneys.com

/s/ Jason S. Morgan
ATTORNEY FOR DEFENDANT,
THOMAS CZARTORSKI

4862-2553-3210, v. 1

24