UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KEVIN HORNBACK, et al.                                              Plaintiffs

v.                                              Civil Action No. 3:20-cv-703-RGJ

THOMAS CZARTORSKI, et al.                                           Defendants

* * * * *

## MEMORANDUM OPINION & ORDER

Alex Hornback ("Alex"), Kevin Hornback ("Kevin"), and Sonya Hornback ("Sonya") (collectively, "Plaintiffs") move for partial summary judgment on liability for their claims. [DE 66]. Defendants Cameron Wright ("Wright") and Kevin Dreisbach ("Dreisbach") responded [DE 70], and Defendant Thomas Czartorski ("Czartorski") responded separately [DE 72].[1] Plaintiffs replied to both responses. [DE 79]. Czartorski, separately, and Wright and Dreisbach, collectively, move for summary judgment. [DE 68-1; DE 69-1]. Plaintiffs responded [DE 76; DE 77] and Defendants replied [DE 81, DE 82]. In addition, Plaintiffs move to exclude Defendants' expert [DE 65] and Defendants move to exclude Plaintiffs' expert [DE 67-1]. Responses and replies were filed. [DE 73; DE 75; DE 78; DE 80]. Briefing is complete, and the matter is ripe. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Exclude Defendants' Expert [DE 65], **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude Plaintiffs' Expert [DE 67-1], **DENIES** Plaintiffs' Motion for Partial Summary Judgment [DE 66], **GRANTS IN PART** and **DENIES IN PART** Czartorski's Motion for Summary Judgment [DE 68-1], and **GRANTS IN PART** and **DENIES IN PART** Wright and Dreisbach's Motion for Summary Judgment [DE 69-1].

---

[1] Wright, Dreisbach and Czartorski are collectively referred to as "Defendants."

1

I.      **BACKGROUND**

Plaintiffs allege that Defendants breached 42 U.S.C. § 1983 by violating their rights under the First, Fourth, and Fourteenth Amendments.  [DE 40 at 652–53].  A bench warrant was issued for Alex for failing to appear at a contempt hearing in Jefferson District Court on or about March 28, 2020.  [DE 66 at 1507].  On April 9, 2020, at approximately 7:30 p.m., Kentucky State Police Troopers, Czartorski, Wright, and Dreisbach, arrived at Plaintiffs' house to execute the bench warrant.  [DE 69-1 at 2135]. Because Alex had a history of fleeing, Dreisbach went to cover the rear of the house.  [*Id.*].   Kevin initially answered the door and was joined shortly thereafter by Sonya.  [DE 66 at 1507]. Once Kevin confirmed that Alex was home, Wright and Czartorski entered the house.  [DE 69-1 at 2135].  Kevin led Wright and Czartorski to the basement where Alex was located.  [DE 66 at 1507].

Unknown to Defendants at the time, a video-only camera in Plaintiffs' basement captured the events that unfolded [DE 64 ("Basement Video")].  [DE 66 at 1509].  Plaintiffs and Defendants give conflicting accounts of what transpired after Wright and Czartorski encountered Alex in the basement, however, to avoid any misrepresentations of the facts, the Court adopts the facts as clearly recorded in the video evidence.[2]  *See Scott v. Harris*, 550 U.S. 372, 380–82 (2007).

---

[2] Wright and Czartorski's testimony directly conflicted with the Basement Video.  The Court has included a few examples below that were noted in Janota's expert report:

Page 68, (Wright's deposition): "Q. As you sit here today, as best as you can recall, at no time did Trooper Czartorski ever strike Alex? A. I never saw Trooper Czartorski strike Alex.

Page 73,(Wright's deposition): "Q. And then you said, no use of force other than taking him to the ground to effect the arrest was used? A. Correct". Q. And just to be clear, you never struck him even once with your fist, elbow or any part of your – A. Never."

Page 78 through 80, (Czartorski's deposition): "Q. Did you ever strike him with any object? A. No. Q. As you sit here today, you have no recollection that you can recall or reason why you would have to use force on him. Right? A. No. Q. So you did use force on him? All

The basement was dark, and thus, Czartorski entered the basement with his flashlight drawn and lit. [DE 69-1 at 2135]. Once Wright and Czartorski entered the basement with Kevin and Sonya, Alex emerged from his room. [*Id.* at 2135–36]. Wright and Czartorski both claim they instructed Alex to face the wall. [DE 68-1 at 1793; DE 69-1 at 2136]. Alex turned to the wall once Wright guided Alex into the correct position. [DE 69-1 at 2136]. Wright acknowledges that Alex was confused by orders from himself and Czartorski as to whether to place his hands behind his back or face the wall. [*Id.*]. Alex can be seen speaking to Wright and Czartorski while they give him instructions. [*Id.*]. Alex removed his right hand from the wall as he turned to face Wright during their conversation. [*Id.*]. He quickly put his hand back on the wall but moved slightly to his left, where the wall ended and opened into Alex's bedroom. [DE 64 Basement Video at 00:54–00:58]. At this point, Wright made the decision to take Alex to the ground by placing his forearm across Alex's uppermost chest, grasping Alex's opposite shoulder, and performing a twisting, then downward motion. [DE 69-1 at 2136]. Kevin and Sonya remained within two to three feet of officers and can be seen speaking towards Defendants and Alex during the arrest. [DE 64 Basement Video at 00:45–1:02]. Czartorski moved Sonya to the side when Wright took Alex to the ground. [*Id.* at 1:00–1:03]. While Plaintiffs claim Alex did not resist arrest [DE 66 at 1507], Defendants characterize the takedown as a necessary means to gain control while Alex resisted [DE 68-1 at 1794; DE 69-1 at 2137].

Once on the ground, Alex landed on his side with his arms beneath his body. [DE 64 Basement Video at 1:00–1:03]. To make Alex lay down, Wright struck Alex in the back twice

---

right. Let me do this. True or false, at no time did you use force on him? A. I did not use force on him. Q. Okay. And you never struck him, right? And you can tell me as you sit here today I never struck him with an object? A. Correct."

[DE 53-1 at 742].

with his elbow. [*Id.* at 1:03–1:07]. At the same time, Czartorski kneeled over Alex and struck Alex's legs with a flashlight three times. [DE 68-1 at 1794]. Kevin physically restrained Sonya, who attempted to move toward her son after Czartorski and Wright began striking Alex on the ground. [DE 64 Basement Video 1:00–1:07]. Czartorski stood up to motion back Kevin and Sonya before quickly kneeling to deliver a fourth strike to Alex's legs with his flashlight. [DE 68-1 at 1794; DE 64 Basement Video at 1:04–1:07]. Wright then pulled Alex's hands behind his back. [DE 64 Basement Video at 1:08–1:10]. Kevin and Sonya, who were within feet of Wright and Czartorski in a small corner of the basement, stepped over Alex's legs towards the exit. [*Id.* at 1:10]. Kevin turned on the basement lights and reappeared shortly afterward to video the interaction on his cellphone. [*Id.* at 1:10–1:38]. While Kevin is retrieving his cellphone, Sonya steps towards Wright and Czartorski and stands over Alex, which prompts Wright to draw his taser and point it at Sonya. [*Id.* at 1:08–1:14]. Dreisbach then enters the basement for the first time to handcuff Alex before Plaintiffs and Defendants exit the basement. [DE 69-1 at 2138]. Again, Plaintiffs claim that Alex did not resist arrest [DE 66 at 1508], but Defendants claim Alex's actions constitute resisting arrest while Sonya and Kevin continually interfered with their attempts to arrest Alex [DE 68-1 at 1794; DE 69-1 at 2138].

After exiting the basement, Kevin and Sonya accompanied Defendants outside to their vehicles with Alex, which was captured by a dashcam that recorded audio and video [DE 64 ("Dashcam Video")]. [DE 66 at 1508]. Although the parties are not within the scope of the video, the audio is recorded. Kevin claims that Wright threatened to charge him and Sonya with a crime if he did not delete the video he took while Alex was being arrested in the basement. [*Id.* at 1518]. Kevin also alleged that Dreisbach was involved and could have stopped Wright from threatening

Kevin.[3]  [*Id.*].   Dreisbach can be heard telling Kevin that "if you intend to put us on social media, we'll just go ahead and charge you so we have something to back us up."  [DE 66 at 1521; DE 64 Dashcam Video at 13:20–13:26].   He also stated that "if you are going to go ahead and blast us [on social media], we will go ahead and charge you so we have something to back up our case." [*Id.*].   At some point after Alex was arrested, Kevin deleted the video from his phone and Driesbach allegedly deleted the video from Kevin's trash folder.  [DE 69-1 at 2138].   Kevin and Sonya were not charged with a crime after Defendants conferred with their supervisor.  [DE 64 Dashcam Video 26:00–30:00].

Plaintiffs asserted four claims against Defendants: (1) First Amendment retaliation by all Defendants against Kevin and Sonya; (2) violations of the Fourth and Fourteenth Amendments by Wright and Dreisbach against Kevin and Sonya for illegal detention and against Kevin for deleting the cell phone video; (3) violations of the Fourth and Fourteenth Amendments by Wright and Czartorski for use of excessive force against Alex; (4) failure to intervene by Wright against Kevin and Sonya.  [DE 40].   Plaintiffs move for partial summary judgment as to liability on these claims [DE 66] and Defendants move for summary judgment [DE 68-1; DE 69-1].   To support their claims and defenses, Czartorski discloses Dr. William Gaut ("Gaut") [DE 52] and Plaintiffs disclose Ronald Janota ("Janota") [DE 53] as expert witnesses.   Because the expert reports apply to the parties' summary judgment motions, the Court will first resolve the motions to exclude these experts and then consider all three competing motions for summary judgment.

---

[3] Although Plaintiffs brought a claim against Dreisbach for failure to intervene, Dreisbach was the officer who spoke directly with Kevin and Sonya about the cellphone footage and can be heard in the Dashcam Video.  [DE 69-1 at 2159].   Wright was the bystander who allegedly could have intervened in the interaction between Kevin and Dreisbach.  [*Id.* at 2161].   For purposes of this Order, the Court reads the Second Amended Complaint to assert a claim against Wright for failure to intervene.

II.   **MOTIONS TO EXCLUDE**

Plaintiffs move to exclude Gaut's testimony on several grounds, including Gaut's qualifications, the relevance of his testimony, and his reliability.  [DE 65].  Similarly, Defendants argue that Janota's testimony is irrelevant and includes improper legal conclusions.  [DE 67-1].

   **A.  Standard**

The admissibility of expert testimony is set forth in Rule 702 of the Federal Rules of Evidence.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant."  *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir.2002) (alteration and internal quotation marks omitted).

> Under Rule 702 of the Federal Rules of Evidence, 'a proposed expert's opinion is admissible . . .  if the opinion satisfies three requirements.  First, the witness must be qualified by knowledge, skill, experience, training, or education.  Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue.  Third, the testimony must be reliable.

*Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)).

The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).  The Court must determine whether

6

the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at * 33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge.").   "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth.  The weight of the expert's testimony must be for the trier of fact." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

Along with qualifications, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v. Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013) (quoting *Daubert*, 509 U.S. at 597). To assist with this determination, the Supreme Court in *Daubert* laid out factors[4] for the courts to consider.  *Daubert*, 509 U.S. at 592–94. Courts have "stressed, however, that *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. . . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience."  *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding that the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review

---

[4] The *Daubert* factors include "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (quoting *Daubert*, 509 U.S. at 592–94).

or to traditional scientific evaluation") (internal citations omitted).  "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."  *Kumho Tire Co.*, 526 U.S. at 139.

> **B. Plaintiffs' Motion to Exclude, or in the Alternative Limit, Testimony of William Gaut, Under *Daubert v. Merrell Dow Pharm., Inc.*, 113 S. Ct. 2786 (1993) [DE 65]**

Gaut is a retired police trooper whose command-level experience includes Captain of Detectives and Patrol Precinct Captain/Commander.  [DE 52-1 at 707].  He holds several degrees in criminal justice and public and private management.  [*Id.* at 733].  Defendants assert that Gaut will testify regarding two opinions:

1. The procedures used by KSP Troopers in serving a Criminal Arrest Warrant were in keeping with generally accepted law enforcement standards.

2. The force used by KSP Trooper Thomas Czartorski to take Alex Hornback into police custody was not excessive and was in keeping with the generally accepted law enforcement standards.

[*Id.* at 713; DE 73 at 3314–15].  Plaintiffs have moved to exclude several different pieces of Gaut's testimony.  [DE 65].  The Court will address each argument below.

> *1. Gaut's Opinions Regarding Procedures Used by KSP Troopers in Serving a Criminal Arrest Warrant*

Plaintiffs argue that Gaut's opinion that the procedures used by KSP Troopers in serving a criminal arrest warrant were in keeping with generally accepted law enforcement standards is irrelevant and unsupported.  [*Id.* at 1495].  Defendants contend that Gaut's testimony on these issues is relevant to explain Defendants' actions and assist the trier of fact in understanding the issues to be decided.  [DE 73 at 3315].

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Testimony about operational standards is relevant when considering the totality

of the circumstances as required under *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The totality of the circumstances would include Defendants' compliance with standard operating procedures and generally accepted law enforcement standards.  Gaut's testimony would assist the trier of fact in evaluating whether Defendants' actions were reasonable under the totality of the circumstances. *See Norman v. City of Lorain*, No. 1:04 CV 913, 2006 WL 5249725, at *3 (N.D. Ohio Nov. 27, 2006) (holding an expert may testify regarding the proper procedures for completing an arrest). Because Gaut's testimony is relevant under Rule 401, the Court will not exclude Gaut's testimony on this issue.

> ### 2.   *Gaut's Opinions on Excessive Force Based on His Review of Evidentiary Material*

Plaintiffs argue that Gaut's opinion on the use of force used to take Alex into custody is based on misrepresentations of facts in the record and would be unhelpful for the jury.  [DE 65 at 1496].   Plaintiffs also claim that Gaut's summary of the facts from his viewing of the Basement Video differ from the testimony on this matter, and therefore, his opinion is unreliable and unhelpful.  [*Id.*].  Defendants contend Gaut's opinion is based on the record and any dispute as to the basis of his opinions goes to the credibility and weight of the opinion.  [DE 73 at 3317].

Although Plaintiffs argue that "Gaut does not get to offer opinions that conflict with the facts of this case" [DE 65 at 1496], they do not cite any improper factual assertions that Gaut may have relied on in formulating his opinions.   Gaut lists the evidence he reviewed to form his opinions.  [DE 52-1 at 710–12].  Gaut's testimony relates to whether Czartorski used proper procedures that followed internal policy.  [DE 63 at 1226, Gaut Dep. Tr. 98:2–9].  Testimony related to whether Defendants complied with internal policies and procedures is relevant to assist the trier of fact in determining whether Defendants used excessive force.  *See* Fed. R. Evid. 401. To the extent Plaintiffs dispute the basis of Gaut's testimony, such arguments would affect the

credibility and weight of his opinions. *See Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 560 (6th Cir. 2014) (holding that evaluating the weight of the evidence is beyond the purview of the court). The jury will be allowed weigh Gaut's opinion when he relies on testimony instead of video evidence to form the basis of his opinions. *See id.* Therefore, the Court will not exclude Gaut's testimony on this issue.

### 3. Gaut's Opinions Regarding Kentucky State Police Training and the Specific Trooper Training

Plaintiffs argue that Gaut's opinion about the training for Kentucky State Police Troopers generally, and Defendants specifically, is irrelevant and unhelpful to the jury. Gaut includes opinions on police training in his expert report. [DE 51-1 at 714–20]. The Sixth Circuit has held that such expert testimony is helpful to a jury considering whether an officer's actions toward a suspect were "objectively reasonable" considering the facts and circumstances. *See, e.g.*, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 907 (6th Cir. 2004). Courts have also permitted experts to testify about policies as they relate to particular defendants when those experts are properly credentialed, and their testimony assists the trier of fact. *Id.* at 908–909 (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1163–64 (6th Cir. 1996); *Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987)).

Similar to the expert in *Champion*, Gaut has decades of experience with police policies as a police officer and as a professor. [DE 52-1 at 731–33]. Gaut also has a Ph.D. in criminal justice. The Court finds that Gaut is properly credentialed to testify regarding police policies and procedure. Additionally, Courts in the Sixth Circuit have held that whether an officer violated policies and procedures is relevant when considering the reasonableness of the use of force. *See King v. Taylor*, 944 F. Supp. 2d 548, 555 (E.D. Ky. 2013). Gaut will be providing the trier of fact a relevant opinion that will help determine whether Defendants violated Alex's constitutional

rights.  Because Gaut is properly credentialed and providing relevant testimony, the Court will not exclude his testimony on this issue.

### 4.  *Gaut's Opinions Regarding Failure-to-Train Liability Under § 1983*

Plaintiffs argue that Gaut's opinion about failure-to-train liability under § 1983 are irrelevant and unhelpful.  [DE 65 at 1497–98].  Defendants contend that this opinion provides an evidentiary foundation.  [DE 73 at 3319].

Plaintiffs do not assert a failure-to-train claim under § 1983.  [DE 40].  In his expert report, Gaut opines on failure-to-train liability that can arise under § 1983.  [DE 52-1 at 718–19].  Because this is an opinion on a claim that was not asserted, the Court cannot find that this opinion will assist the trier of fact.  *See Goodwin v. Richland Cnty.*, 832 F. App'x 354, 358 (6th Cir. 2020).  Moreover, introducing evidence on an unrelated claim would only confuse the issues and mislead the trier of fact.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").  Because Gaut's opinion on failure-to-train liability is unrelated to any of Plaintiffs' claims, the Court will exclude this testimony.

### 5.  *Gaut's Opinion Regarding Defendants Covering the Rear of the Residence*

Plaintiffs argue that Gaut's opinion about Defendants covering the rear of the residence is irrelevant, unhelpful, and unreliable.  [DE 65 at 1498].  In his expert report, Gaut explains that "[i]t is standard practice for Troopers to 'cover' front and rear exits to homes for Trooper safety and to prevent the wanted subject from fleeing."  [DE 52-1 at 721].  He examines this tactic in the context of the operational circumstances of the arrest.  [*Id.*].

11

Testimony about Defendants' compliance with operational standards is relevant when considering the particular facts and circumstances of the situation. *See Graham*, 490 U.S. at 396. In this situation, Alex had a history of fleeing or evading police. [DE 52-1 at 721]. Therefore, Gaut's opinion that Defendants complied with operational standards by sending Dreisbach to cover the rear exit of the residence would likely assist the trier of fact. Therefore, the Court will not exclude Gaut's testimony on this issue because it is relevant. *See* Fed. R. Evid. 401.

> 6. *Gaut's Opinion Regarding Defendants' Ability to Carry Out Their Threats of Arrest Directed at Kevin and Sonya*

Plaintiffs argue that Gaut's opinion that Defendants could arrest Kevin and Sonya for harboring a fugitive should be excluded because it is a misstatement of the law. [DE 1498–99]. Gaut testifies that, in his experience, Kevin and Sonya had a valid defense to any charge for harboring a fugitive. [DE 52-1 at 722]. He also explains that "it is up to the Court to interpret the law and rule on the [Defendants'] actions." [*Id.*].

The Sixth Circuit has not held that suspects cannot be arrested or charged anytime there is an affirmative defense that may be asserted. Instead, the Sixth Circuit explained that "where a reasonable police officer would conclusively know that [a suspect's] behavior is protected by a legally cognizable affirmative defense, that officer lacks a legal foundation to arrest that person for that behavior." *Painter v. Robertson*, 185 F.3d 557, 571 (6th Cir. 1999). Plaintiffs have not cited evidence that Defendants were aware of this affirmative defense. Instead, Gaut offers an opinion on the circumstances surrounding the decision not to charge Kevin and Sonya and explains that any legal determinations are left to the Court. [DE 52-1 at 722]. The evidence is unclear whether Defendants had enough information to charge and arrest Kevin and Sonya. Because Gaut's opinion may assist the trier of fact in determining whether Kevin and Sonya could be charged with a crime, see Fed. R. Evid. 401, the Court will not exclude Gaut's testimony on this

12

issue. Yet the Court cautions Defendants that Gaut will not be allowed to testify about legal conclusions left to the providence of the Court. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (1994).

### 7. *Gaut's Opinion on the Kentucky State Police's Use-of-Force Policy*

Plaintiffs argue that Gaut's interpretation of the Kentucky State Police's use-of-force policy is unhelpful and unreliable. [DE 65 at 1499–1500]. Gaut's report discusses the Kentucky State Police use-of-force policy and Czartorski's compliance with that policy. [DE 52-1 at 725].

Courts in the Sixth Circuit have found that police officers may offer "expert testimony regarding recognized police policies and procedure . . . provided that the experts do not express legal conclusions based on their interpretation of the application of those policies in a particular case." *Alvarado v. Oakland Cnty.*, 809 F. Supp. 2d 680, 690 (E.D. Mich. 2011); *see also Gough v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:12-CV-849- DJH-CHL, 2016 WL 4535663, at *2 (W.D. Ky. Aug. 30, 2016) (finding that the police expert "may, however, testify regarding use-of-force policies and procedures and whether [the officer]'s actions were consistent with those standards."). If Gaut's testimony conflicts with testimony of another witness, then that would affect the weight, not the admissibility of Gaut's opinion. *See Mannino*, 650 F.2d at 851. Therefore, the Court will not exclude Gaut's testimony on this issue.

### 8. *Gaut's Opinion Regarding the Use of Force under* Graham v. Connor *and Eighth Circuit Case Law*

Plaintiffs argue that Gaut's testimony about Czartorski's use of force analyzed under *Graham* and Eighth Circuit case law should be excluded because it is a legal opinion. [DE 65 at 1500]. Gaut testifies that *Graham* requires courts to review whether the use of force was objectively reasonable. [DE 52-1 at 726]. He explains that the objectively reasonable standard means "reasonable, not under the concept of what the officer believes at the time the force is used,

but what a reasonable officer would believe under the same or similar circumstances." [*Id.*]. Gaut quotes the standards articulated in *Graham* and explains that objective reasonableness must be evaluated under the totality of the circumstances.  [*Id.*].  Gaut then testifies about standards regarding use of force as articulated by the International Association of Chiefs ("IACP").  [*Id.* at 727].   After describing the IACP Model Policy on Use of Force, Gaut quptes *Schulz v. Long*, 44 F.3d 643, 649 (8th Cir. 2005) to further explain the policy on use of force.  [DE 52-1 at 727–28].

Federal Rule of Evidence 702 "prohibits expert witnesses from testifying to legal conclusions." *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016).  The Sixth Circuit has held that an expert is offering a legal conclusion "when he defines the governing legal standard or applies the standard to the facts of the case."  *Id.* (citing *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150–51 (6th Cir. 1985)).   Courts have extensive, but not unlimited, discretion to admit or exclude testimony that arguably contains legal conclusions.  *See Torres*, 758 F.2d at 150 (citing *Stoler v. Penn Cent. Transp. Co.*, 583 F.2d 896, 899 (6th Cir. 1978)).   To determine whether a witness is articulating a legal conclusion, the Court must look at the terms used in the witness's testimony and decide whether they have a "separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.*  If they do, then the Court must exclude the testimony. *Id.* (citing *United States v. Hearst,* 563 F.2d 1331, 1351 (9th Cir. 1977), *cert. denied,* 435 U.S. 1000 (1978)).

Gaut testifies at length about the "objectively reasonable" standard derived from *Graham*. [DE 52-1 at 726–28].  Outside of its legal framework, the phrase "objectively reasonable" could not contain concepts such as the totality of the circumstances or what a reasonable police officer would believe in similar circumstances.  *See Torres*, 758 F.2d at 150.  Gaut not only defined the governing legal standard from *Graham*, but also supplemented that definition with case law from

the Eighth Circuit. [DE 52-1 at 726–28]. Gaut then analyzed the facts of the case under the standard he articulated. [*Id.*]. The Court cannot allow Gaut to testify about legal standards or conclusions. *Melcher*, 672 F. App'x at 552. Therefore, the Court will exclude Gaut's testimony to the extent he defines standards under the case law and applies them to the facts of this case. The Court notes that Plaintiffs do not challenge Gaut's testimony regarding the application of the IACP Model Policy on Use of Force. Therefore, the Court will not exclude testimony regarding these standards or the Defendants' compliance with these standards.

### 9. *Gaut's Opinion Regarding Alex's Injuries*

Plaintiffs argue that Gaut's testimony about Alex's bruising should be excluded because his opinions are unreliable. [DE 65 at 1500–501]. Gaut testifies that photographs of Alex's legs lack evidence of a physical injury, which would suggest that Czartorski did not use excessive force. [DE 52-1 at 729].

Plaintiffs cite several cases to argue that Gaut's opinion based on Alex's bruising should be excluded. [DE 65 at 1500–501; DE 78 at 3693–94]. None of these cases are from the Sixth Circuit. Gaut relied on the photos as part of his opinion that Czartorski did not use excessive force on Alex. [DE 52-1 at 729]. This evidence would be relevant in assisting the trier of fact. *See* Fed. R. Evid. 401. Plaintiffs' arguments simply go to weight instead of admissibility. *Mannino*, 650 F.2d at 851. Therefore, the Court will not exclude Gaut's testimony on this issue.

### 10. *Gaut's Opinion Regarding Damage to Plaintiffs' Reputations*

Plaintiffs claim that Gaut's testimony about Plaintiffs' reputational damages is unhelpful and unreliable. [DE 65 at 1501–502]. Gaut testifies that Alex's prior arrests occurred at Plaintiffs' residence and noted that Plaintiffs voluntarily posted the video footage of this arrest on social media. [DE 52-1 at 729]. He also notes that turning on emergency lights when parties are near the street is standard operating procedure. [*Id.*].

15

Gaut's testimony again relates to standard operating procedures and Defendants' compliance with these procedures. Testimony about whether Defendants complied with specific operating procedures is relevant to the trier of fact when evaluating the totality of the circumstances. *See Graham*, 490 U.S. at 394. Plaintiffs' arguments go to the weight of Gaut's testimony, not its admissibility. *Mannino*, 650 F.2d at 851. Therefore, the Court will not exclude Gaut's testimony on this issue.

### 11. Gaut's Compliance with Federal Rule of Civil Procedure 26

Plaintiffs argue that Gaut shout be precluded from testifying because he failed to strictly comply with Federal Rule of Civil Procedure 26(a)(2)(B)(v). [DE 65 at 1502–503]. Rule 26(a)(2)(B)(v) requires an expert disclosure to include "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." A party who fails to disclose under Rule 26(a) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Expert disclosures "eliminate 'unfair surprise to the opposing party.'" *City of Owensboro v. Ky. Utilities Co.*, No. 4:04-CV-87-M, 2008 WL 4642262, at *3 (W.D. Ky. Oct. 14, 2008) (quoting *Muldrow ex rel. Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007)). Cases required by Rule 26(a)(2)(B)(v) "must include, at a minimum, the courts in which the testimony occurred, the names of the parties and the case numbers, and must indicate whether the testimony was given at deposition or at trial." *Ater v. Follrod*, No. 2:00-cv-934, 2004 U.S. Dist. LEXIS 31587, at *3 (S.D. Ohio Nov. 10, 2004) (citing *Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y. 1999)).

The Sixth Circuit has adopted a five-factor test to determine whether a deficiency should be excused:

> (1) the surprise to the party against whom the evidence would be offered; (2) the
> ability of that party to cure the surprise; (3) the extent to which allowing the
> evidence would disrupt the trial; (4) the importance of the evidence; and (5) the
> nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2018). The burden is "on the potentially

sanctioned party to prove harmlessness." *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th

Cir. 2003).

In his expert report, Gaut included an attachment citing more than two dozen cases where

he has testified in the last four years. [DE 52-1 at 736]. Gaut testified that, to his knowledge, this

was a complete list of cases required by Rule 26(a). [DE 73 at 3324–25]. He also testified that he

updates his list of cases each time he gives a deposition. [*Id.*]. However, Plaintiffs cite to an

additional seven cases that were not included on Gaut's report. [DE 65 at 1502–503]. Gaut has

not supplemented the record with any additional cases. Plaintiffs argue that Gaut's testimony

should be excluded because his disclosure did not comply with Rule 26(a). [DE 65 at 1502–503].

Defendants counter that Gaut's testimony should not be excluded because the error was harmless,

[DE 73 at 3326], but do not offer to disclose additional information.

It is not clear to the Court that Plaintiffs are aware "of *all* other cases in which, during the

previous 4 years, [Gaut] has testified as an expert at trial or by deposition[.]" Fed. R. Civ. P.

26(a)(2)(B)(v). However, Plaintiffs' discovery of additional cases is not evidence that Gaut knows

of other cases that must be disclosed. Courts have some leeway to impose appropriate sanctions

for deficient expert disclosures other than complete exclusion of the expert's testimony. *Roberts*,

325 F.3d at 783–84. The Court will require Defendants to provide Plaintiffs with an updated and

accurate case list for Gaut, and then will allow for a second deposition of Gaut with a limited scope

of discussion of those cases that were not on the case list provided before his first deposition. If

Defendants fail to provide a complete list of cases, then Gaut may be excluded.

Accordingly, Plaintiffs' Motion to Exclude Defendants' Expert [DE 65] is **GRANTED IN PART** on Gaut's testimony on failure-to-train liability and his testimony articulating legal standards under *Graham* and Eight Circuit case law.   Within ten (10) days of this Order, Defendants **shall provide**, to Plaintiffs, an updated case list for Gaut that includes "*all* other cases in which, during the previous 4 years, [he has] testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v) (emphasis added).   Further, Defendants **shall make** Gaut available for a second deposition, within twenty (20) days of its disclosure of Gaut's updated list, with the limited scope of discussion of any newly disclosed cases.   Plaintiffs' Motion to Exclude Defendants' Expert [DE 65] is **DENIED IN PART** on all other grounds.

### C.  Defendants' Joint Motion to Exclude Plaintiffs' Expert Ronald Janota

Janota served for over for over 28 years in active law enforcement, which included work in supervisory, policy making and command positions.   [DE 53-1 at 741].   He also obtained a Bachelor of Science in law enforcement and completed thousands of hours of additional training. [*Id.* at 747].   Janota's expert report includes four opinions:

Opinion #1: The physical force used by Troopers Czartorski and Wright during the arrest of Alex Hornback was not justified and does not conform to the industry standards and policies for proper police conduct.

Opinion #2: Troopers Wright and Czartorski committed perjury and failed to tell the truth regarding the arrest of Alex Hornback.

Opinion #3: Troopers Wright and Czartorski violated the Kentucky State Police policies of, "Response to Resistance", General Order OM-B-4, and "Response to Resistance: Reporting, Investigation, and review", General Order OM-B-4a. The inappropriate use of force By Wright and Czartorski does not conform to proper industry standards in the field of law enforcement.

Opinion #4: Kevin Hornback recorded some of the arrest of Alex in the basement of his own home with his cellphone. The cellphone was seized by one of the three Troopers. The recording was deleted.  Seizing Kevin Hornback's cellphone and deleting the video violated his Constitutional rights.

[*Id.* at 741–43].  Defendants have moved to exclude Gaut's testimony as it relates to his four opinions.  [DE 67-1].  The Court addresses each of Defendants' arguments below.

### 1. *Conclusory Nature of Opinion #1*

Defendants argue that Janota's first opinion should be excluded because it is conclusory.  [DE 67-1 at 1540].  Janota based his testimony on Kentucky State Police, General Order OM-B-4, H. 520.090.  [DE 53-1 at 741].  He testified that Wright and Czartorski's use of force while arresting Alex did not conform to industry standards because Alex was not resisting arrest under General Order OM-B-4, H. 520.090.  [*Id.*].

Experts may offer testimony on police policies and procedures and their application to the facts of a case.  *Alvarado*, 809 F. Supp. 2d at 690.  Experts have been specifically allowed to testify about use-of-force standards.  *See, e.g.*, *Gough*, 2016 WL 4535663, at *2.  Yet Experts cannot offer legal conclusions based on their interpretation of those police policies and procedures.  *See Alvarado*, 809 F. Supp. 2d at 690.  Janota's testimony analyzes Kentucky State Police, General Order OM-B-4, H. 520.090 and whether Wright and Czartorski complied with the General Order.  [DE 53-1 at 741].  Ultimately, his testimony relates to compliance with a police policies and procedures, which other Courts in the Sixth Circuit have permitted.  *See Alvarado*, 809 F. Supp. 2d at 690.  Therefore, the Court will not exclude Janota's first opinion on this basis.

### 2. *Evidentiary Foundation of Opinion #1*

Defendants argue that Janota's Opinion #1 is not reliable because there is no evidentiary foundation.  [DE 67-1 at 1541].  "The Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'"  *Powell*, 942 F. Supp. 2d at 686 (quoting *Daubert*, 509 U.S. at 597).  In forming

his opinion, Janota reviewed the Second Amended Complaint, interrogatory responses, depositions of Plaintiffs, Defendants, and Scott Brown, the Basement Video, the Dashcam Video, and Kentucky State Police General Orders.  [DE 53-1 at 739].

Defendants acknowledge that the video does not have audio.  [DE 67-1 at 1542]. Therefore, Janota relied on several other pieces of evidence to support his opinion and add context that was not available without audio.  [DE 53-1 at 739].  Kevin and Sonya both testified that Alex was not resisting arrest.  [DE 60 at 947, Sonya Dep. Tr. 42:16–23 ("[T]hat's when he got taken down and slammed and crap beat out of him for no reason."); DE 61 at 1049–50, Kevin Dep. Tr. 27:18–28:1 ("You can look at [Sonya] and myself, we're astonished, what are you doing? He's cooperating.")].  Alex also testified that he was not resisting arrest.  [DE 59 at 805–806, Alex Dep. Tr. 21:16–22:2 ("[A]ll[] I've done is complied with orders and now I'm being thrown to the ground.")].  Wright and Czartorski offered testimony regarding the events that transpired in the basement, but these statements have largely been proven untrue by the Basement Video.  [DE 53-1 at 742].  Based on the evidence in the record, the Court can determine that Janota's expert opinion rests on the evidence in the record.  *See Powell*, 942 F. Supp. 2d at 686.  Defendants' arguments go to the weight of Janota's testimony, not its admissibility.  *See Mannino*, 650 F.2d at 851. Therefore, the Court will not exclude Janota's first opinion on this basis.

### 3. *Factual Basis for Opinion #1*

Defendants argue that Janota's first opinion should be excluded because it does not have a factual basis.  [DE 67-1 at 1542].  Defendants claim that Janota could not have determined Alex was not resisting arrest based on the video because he could not determine whether Alex was tensing himself.  [*Id.*].  Yet Janota also relied on depositions when

developing his opinions.  [DE 53-1 at 739].  Plaintiffs, who either witnessed or were the subject of the arrest, all testified that Alex was not resisting.  [DE 75 at 3607].  Even Czartorski testified that there was no reason to use force to arrest Alex.  [DE 22, Czartorski Dep. Tr. 79:3–8].  Because there is evidence in the record, the Court finds that Janota had a factual basis for Opinion #1.  Any argument by Defendants' regarding the factual basis of Janota's opinion go to the weight of Janota's testimony.  *See Mannino*, 650 F.2d at 851. Therefore, the Court will not exclude Janota's first opinion on this basis.

### 4. *Janota's Consideration of Kentucky State Police Policies as They Relate to Opinion #1*

Defendants argue that Janota's Opinion #1 should be excluded because he did not consider potentially relevant Kentucky State Police policies.  [DE 67-1 at 1544].  In Janota's expert report, he relies on Kentucky State Police General Orders OM-B-4 and OM-B-4a.  [DE 53-1 at 739].  Defendants contend that Janota's testimony should be excluded because he did not also consider policies related to Defendants' training on the use of non-lethal force and de-escalation tactics.  [DE 67-1 at 1544–46].  Yet this Court has held that "familiarity or lack thereof with particular Kentucky standards goes to the weight" of the testimony, not its admissibility.  *Boerste v. Ellis, LLC*, No. 3:17-CV-00298-BJB-CHL, 2021 WL 6101678, at *5 (W.D. Ky Sept. 29, 2021).  Therefore, the Court cannot exclude Janota's opinion on this basis.

### 5. *Janota's Consideration of Defendants' Knowledge Prior to the Arrest as it Relates to Opinion #1*

Defendants argue that Janota's first opinion should be excluded because he did not consider Defendants' knowledge prior to the arrest.  [DE 67-1 at 1546].  Janota testified that he was unaware of what Defendants knew prior to arresting Alex.  [DE 67-3 at 1631, Janota Dep. Tr. 38:4–15].  Nevertheless, Janota did consider Defendants' testimony and

Alex's criminal history.  [*Id.* at 1627–29, 34:16–36:24].  He also testified that Alex's criminal history, in Janota's opinion, had "very little bearing on this case."  [*Id.* at 1629, 36:23–24].  In instances where parties have disputed the information considered by experts in formulating their opinions, this Court has held that such arguments go to the weight of the testimony.  *Boerste*, 2021 WL 6101678, at *5.  Defendants have failed to prove that Janota's failure to consider Defendants' knowledge warrants preclusion of his testimony.  Therefore, the Court will not exclude Janota's first opinion on this basis.

### 6.  Relevance of Opinion #2

Defendants argue that Janota's second opinion should be excluded because it is not relevant to Defendants' use of force during the arrest.  [DE 67-1 at 1548].  Janota explains that Wright and Czartorski committed perjury because their testimony directly contradicts the video evidence.  [DE 53-1 at 742].  Janota then gives several instances where Wright and Czartorski's testimony differed from the Basement Video.  [*Id.*].

"Expert testimony is relevant under Rule 702 and *Daubert* if it will assist the trier of fact to better understand the evidence or to decide a material fact in issue." *United States v. Gallion*, 257 F.R.D. 141, 150 (E.D. Ky. 2009).  Federal Rule of Evidence 401 provides a liberal standard for relevance.  *Daubert*, 509 U.S. at 587.  Janota admitted that whether Czartorski perjured himself was a separate issue from whether Czartorski used excessive force.  [DE 67-3 at 1701–702, Janota Dep. Tr. 108:2–109:4].  Although the Court applies a liberal relevancy standard under Rule 401, the expert opinion must still make a fact more or less probable.  *See* Fed. R. Evid. 401(a).  Because Janota admits that whether Wright and Czartorski committed perjury is unrelated to the excessive force claim, the Court cannot find that this opinion is relevant.  Nevertheless, Czartorski and Wright's statements plainly contradict the Basement Video, which Janota explains in his expert

report.  [DE 53-1 at 742].  In instances where a party's testimony contradicts undisputed video evidence, the Supreme Court has mandated that courts view the facts in the light depicted by the video tape.  *See Scott*, 550 U.S. at 380–81.  Janota's  opinion is still relevant because it explains how he concluded that Czartorski and Wright used excessive force despite their testimony. Therefore, the Court will only exclude Opinion #2 to the extent that Janota claims that Czartorski and Wright committed perjury.  The Court will not address whether Janota's opinion that Czartorski and Wright is an improper legal conclusion because it will be excluded as irrelevant.

### 7.  *Relevance of Opinion #3*

Defendants argue that Janota's third opinion should be excluded because it is irrelevant and conclusory.  [DE 67-1 at 1551].  In his third opinion, Janota explains that Czartorski and Wright both violated Kentucky State Police General Orders OM-B-4 and OM-B-4a and that their use of force did not conform to industry standards.  [DE 53-1 at 743].

Police officers may offer "expert testimony regarding recognized police policies and procedure . . . provided that the experts do not express legal conclusions based on their interpretation of the application of those policies in a particular case."  *Alvarado*, 809 F. Supp. 2d at 690.  As noted above, experts may opine on use of force policies and whether an officer's actions violated those policies.  *See Gough*, 2016 WL 4535663, at *2.

General Order OM-B-4 is the Kentucky State Police response to resistance policy regarding the use of force, which states that "all sworn officers shall use only the force necessary to accomplish lawful objectives."  [DE 53-1 at 743].  This is precisely the type of policy or standard contemplated by *Gough*.  Janota's testimony would be relevant to assist the trier of fact to determine whether Wright and Czartorski's actions were reasonable under the circumstances.  *See* Fed. R. Evid. 401.  General Order OM-B-4a is the Kentucky State Police policy that would require

a report anytime an officer uses force.  [DE 53-1 at 743].  Again, experts may testify about applicable police policies and an officer's compliance with those policies.  *See Alvarado*, 809 F. Supp. 2d at 690.  Although General Order OM-B-4a is a reporting requirement, Courts have held that evidence about failure to comply with a reporting requirement is relevant to determine whether the defendant believed his use of force was justified.  *See Fenelus v. Pena*, No. 16-21103-CV-COOKE, 2019 U.S. Dist. LEXIS 82148, at \*16–17 (S.D. Fla. May 13, 2019) (inferring a violation of a use-of-force policy when defendant failed to file a use-of-force report).  Although the Court will not infer a violation of the General Order OM-B-4a because Defendants did not file a report, the Court finds that this evidence is relevant.  *See* Fed. R. Evid. 401.  Therefore, the Court will not exclude Janota's Opinion #3.

### 8.   *Conclusiveness of Opinion #4*

Defendants argue that Janota's fourth opinion should be excluded because it is an improper legal conclusion that must be left for the jury.  [DE 67-1 at 1552].  In Opinion #4, Janota ultimately concludes that "[s]eizing Kevin Hornback's cellphone and deleting the video violated his Constitutional rights."  [DE 53-1 at 743].  Plaintiffs concede that this is an improper legal conclusion and have agreed to exclude this portion of Janota's testimony.  [DE 75 at 3612].

Janota's fourth opinion also contains assertions that Kevin recorded Wright and Czartorski and that Defendants seized and deleted the video from his phone.  [DE 53-1 at 743].  Janota explains that these actions violated Kentucky State Police policies and guidelines.  [*Id.*].  As explained in more detail above, experts may testify regarding police policies and whether an officers' actions violated those policies.  *See Alvarado*, 809 F. Supp. 2d at 690.  Therefore, the Court will only exclude Janota's fourth opinion to the extent that it asserts a legal conclusion about whether Kevin's constitutional rights were violated.

Accordingly, Defendants' Motion to Exclude Plaintiffs' Expert [DE 67-1] is **GRANTED IN PART** only as to Janota's testimony that Defendants committed perjury and his testimony concluding that Kevin's constitutional rights were violated and **DENIED IN PART** on all other grounds.

### III.    STANDARDS

#### A. Summary Judgment

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### B. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When advanced by a defendant, qualified immunity is a threshold question of law appropriately determined on a motion for summary judgment. *Harlow v. Fitzgerald*, 457 U.S. 800 (1983). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The plaintiff bears the ultimate burden of proof in establishing that a defendant has no right to qualified immunity. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). That said, in moving for summary judgment based on qualified immunity, a defendant must first show "facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* The burden

then shifts to the plaintiff to show "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017). If "undisputed facts show that the defendant's conduct did indeed violate clearly established rights[,]" or "if there is a factual dispute . . . involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights[,]" a court must deny summary judgment. *Gardenhire*, 205 F.3d at 311 (quoting *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988) (citations omitted)).

The Supreme Court requires a two-pronged approach when resolving questions of qualified immunity, although courts may decide the order in which to address these prongs "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. First, the Court must decide whether a plaintiff has presented facts sufficient to find a violation of a constitutional right. *Id.* at 232. The Court views this evidence in the light most favorable to the plaintiff. *See Shreve*, 743 F.3d at 134. Second, the Court must decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Thus, qualified immunity applies unless the official's conduct violates a clearly established constitutional right. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If the court finds that the plaintiff's right was not clearly established, the Court can start with the second factor and does not "need to determine whether the alleged conduct was in fact unconstitutional." *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (citing *Pearson*, 555 U.S. at 236–43)).

IV.     **FIRST AMENDMENT RETALIATION CLAIMS**

Kevin and Sonya allege that they engaged in protected speech by opposing "the police brutality inflicted upon Alex." [DE 66 at 1522]. They also assert that Defendants retaliated against them for recording Alex's arrest. [*Id.* at 1523]. Wright and Dreisbach contend that Kevin and Sonya have failed to prove retaliation under the First Amendment. [DE 70 at 2443–49]. All three Defendants also assert that their actions were covered by qualified immunity. [DE 68-1 at 1797; DE 69-1 at 2150].

To establish a First Amendment retaliation claim, a plaintiff must show: "1) the plaintiff engaged in constitutionally protected activity; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Wurzelbacher v. Jones-Kelley*, 728 F. Supp. 2d 928, 932 (S.D. Ohio 2010). A plaintiff must "be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2001).

### A.  Kevin's and Sonya's Verbal Opposition to Alex's Arrest

Kevin and Sonya allege that they engaged in a constitutionally protected activity by verbally opposing police brutality inflicted on their son. [DE 66 at 1522]. Courts have held that parties have a First Amendment right to oppose police. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). However, this speech must not interfere with police conduct or obstruct the officer's ongoing investigation. *King v. Ambs*, 519 F.3d 607, 613 (6th Cir. 2008). Kevin and Sonya have also cited cases from outside the Sixth Circuit holding individuals

have a right to video police conduct. *See Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 831–32 (1st Cir. 2020) (citing *Gericke v. Begin*, 753 F.3d 1, 7–8 (1st Cir. 2014)).

Although Kevin and Sonya had a First Amendment right to verbally oppose Defendants' conduct, the right did not extend to interfering with Defendants' investigation and arrest. *See King*, 519 F.3d at 613.  As noted above, Kevin and Sonya remained within two to three feet of officers and during Alex's arrest and can be seen speaking in their direction.  [DE 64 Basement Video at 00:45–1:02].  After Czartorski and Wright took Alex to the ground, Kevin had to physically restrain Sonya, who lunged at the officers.  [*Id.* at 1:00–1:07].  Czartorski had to motion Kevin and Sonya back while arresting Alex.  [*Id.* at 1:04–1:07].  While Alex was on the ground Sonya and Kevin both stepped over Alex, but Sonya remained standing over Alex, Czartorski, and Wright. [*Id.* at 1:08–1:14].  At this point, Wright drew is taser while also restraining Alex.  [*Id.*].

Kevin and Sonya rely on *Hill* for their assertion that they were engaged in constitutionally protected speech.  [DE 66 at 1522–23].  In *Hill*, the Supreme Court recognized that a person may not run beside an officer pursuing a felon and shout at the officer.  482 U.S. at 462 n. 11.  By not only shouting but also running beside the officer, the bystander would be obstructing the officer's investigation and arrest.  *See id.*  Applying *Hill*, the Sixth Circuit has refused to protect speech where "an individual whose act of speaking, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party."  *King*, 519 F.3d at 614.  Like the hypothetical running man in *Hill*, Kevin and Sonya remained only feet away and continually engaged officers while they arrested Alex.  482 U.S. at 462 n. 11.  Therefore, Kevin and Sonya's speech in opposition to Alex's arrest is not protected by the First Amendment.  Because Kevin and Sonya do not engage in speech protected by the First Amendment, Defendants could not have violated "a

clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Silberstein*, 440 F.3d at 311.

### B. Kevin's Recording of Alex's Arrest

Kevin and Sonya also base their First Amendment retaliation claim on Defendants' reaction to Kevin videoing Alex's arrest on Kevin's cell phone [DE 66 at 1523]. As noted in Plaintiffs' Motion for Summary Judgment [*Id.*], courts outside the Sixth Circuit have held that parties have a First Amendment right to record police from a distance in a public place. *See Glik v. Cunniffe*, 655 F.3d 78, 82–83 (1st Cir. 2011); *Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020); *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012); *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020); *Reed v. Lieurance*, 863 F.3d 1196, 1211 (9th Cir. 2017); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

Kevin and Sonya have not cited a case from the Sixth Circuit. [DE 66]. Instead, courts in the Sixth Circuit have held that third parties do not have a clearly established right to record police. *See, e.g.*, *Williams v. City of Paris*, No. 5:15-108-DCR, 2016 WL 2354230, at *4 (E.D. Ky. May 4, 2016) (holding "that the right to film police was not clearly established"); *Davis-Bey v. City of Warren*, No. 16-CV-11707, 2018 WL 895394, at *6 (E.D. Mich. Jan. 16, 2018) (holding that there was no right to record police officers when the recording party remained too close to the scene and interfered with the investigation). The Sixth Circuit has similarly held that this conflict between circuits is evidence that the right to record police is not a clearly established right. *See Clark v. Stone*, 998 F.3d 287, 303–304 (6th Cir. 2021). This Court also finds that Kevin and Sonya's right to record police during Alex's arrest was not clearly established. *See id.* Without a violation of a clearly established constitutional right, Defendants' conduct must be covered by qualified

immunity.  *See Pearson*, 555 U.S. at 232.  Because Kevin and Sonya did not engage in protected speech and because the right to record police is not a clearly established constitutional right in the Sixth Circuit, the Court **DENIES** Plaintiffs' Motion for Summary Judgment [DE 66], **GRANTS** Wrights and Dreisbach's Motion for Summary Judgment [DE 69-1], and **GRANTS** Czartorski's Motion for Summary Judgment [DE 68-1] based on qualified immunity as it applies to Kevin and Sonya's First Amendment claims.

## V.   FOURTH AND FOURTEENTH AMENDMENT ILLEGAL SEIZURE AND ILLEGAL DETENTION CLAIMS

Kevin and Sonya claim that Wright and Dreisbach violated their Fourth and Fourteenth Amendment rights by illegally detaining them and illegally seizing and deleting Kevin's cell phone video of Alex's arrest.  [DE 66 at 1523–25].  Wright and Dreisbach argue that Kevin did not have a right to the recording and that Kevin and Sonya cannot prove damages.  [DE 69-1 at 2154–55].  They also argue that Kevin and Sonya were not detained, but even if Kevin and Sonya were detained, the detention was reasonable.  [*Id.* at 2156–57].  Czartorski also contends that Kevin and Sonya were not seized during their encounter.  [DE 68-1 at 1801].  In the alternative, Cartorski argues that even if Kevin and Sonya were seized, their detention was not illegal.  [*Id.* at 1805].

### A.  Seizure of Kevin's Cell Phone Video

Kevin and Sonya allege that Wright and Dreisbach violated the Fourth Amendment by deleting Kevin's cell phone video of Alex's arrest.  [DE 66 at 1523–25].  The Fourth Amendment protects against unreasonable seizures of property.  *Hensley v. Gassman*, 693 F.3d 681, 688 (6th Cir. 2012). In this context, a seizure involves a "meaningful interference with an individual's possessory interests."  *Id.* (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992)).  To violate the Fourth Amendment, the seizure must have been objectively unreasonable.  *Id.* (citing *United States v. Place*, 462 U.S. 696, 701 (1983)).

Wright and Dreisbach argue that Kevin had no right to the cell phone video because he was interfering with Alex's arrest. [DE 69-1 at 2154–55]. In instances where the person recording police remains at a safe distance and is not interfering with the arrest, this Court held that seizing and deleting the video may amount to a constitutional violation. *See, e.g.*, *Allen v. Thompson*, 14 F. Supp. 3d 885, 897 (W.D. Ky. 2014). In *Allen*, a police officer seized and deleted video from a bystander's cell phone after videoing police during a traffic stop. *See id.* at 889. The Court held that a reasonable jury could find that the bystander was not physically interfering with or interrupting police action. *Id.* at 897.

The Basement Video shows Kevin and Sonya within feet of Wright and Czartorski when they initially make contact with Alex and when they take Alex to the ground. [DE 64 Basement Video 0:54–1:10]. However, Kevin leaves the basement and returns with his cell phone to video the end of Alex's arrest. [*Id.* at 1:10–1:38]. During this time, Kevin remains on the opposite side of the basement from Defendants and does not interfere with the arrest. [*Id.* at 1:36–2:20]. Kevin can be seen stepping back from Defendants to provide additional space when they walk Alex up the basement stairs. [*Id.* at 1:46–1:50]. Similar to the bystander in *Allen*, Kevin remained at a safe distance while he recorded Defendants. *See* 14 F. Supp. 3d 889. Therefore, Kevin had a constitutional right to be free from unreasonable seizures of property that was clearly established at the time. *Hensley*, 693 F.3d at 688. However, there is conflicting testimony regarding the deletion of Kevin's recording. [DE 66 at 1514, 1517–18; DE 69-1 at 2161].

To the extent Wright and Dreisbach argue that Kevin and Sonya's claim should be dismissed because they cannot prove damages [DE 69-1 at 2155–56], this argument is misplaced. "The determination of the amount of damages to be awarded is left to the discretion and good judgment of the fact finder as guided by the facts of the particular case." *Smith v. Heath*, 691 F.2d

220, 226 (6th Cir. 1982) (citing *Tullos v. Corley*, 337 F.2d 884 (6th Cir. 1964)).  The Sixth Circuit has held that compensatory and punitive damages are both available under § 1983 when supported by the evidence.  *See id.* at 227–28.  Accordingly, the Court will leave the question of damages to the ultimate finder of fact.

Because there are genuine disputes of material fact that remain, see Fed. R. Civ. P. 56(a), Plaintiffs' Motion for Summary Judgment [DE 66] is **DENIED** and Wright and Dreisbach's Motion for Summary Judgment [DE 69-1] is **DENIED** as they relate to Kevin and Sonya's Fourth Amendment claim for deleting Kevin's recording.

### B.  Kevin and Sonya's Detention

Kevin and Sonya claim that Wright and Dreisbach detained them in violation of the Fourth Amendment.  [DE 66 at 1524].  The Court will first address whether a seizure occurred before reviewing whether the potential seizure was reasonable.

### 1.  Whether Kevin and Sonya Were Seized

Protections under the Fourth Amendment vest only after a person has been seized by police officers.  *See O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011) (citing *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006)).  A person is unlawfully seized under when an officer, without reasonable suspicion, "by means of physical force or show of authority . . . in some way restrain[s] the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).  One's liberty is restrained when, based on the totality of the circumstances, a reasonable person would not feel free to walk away and ignore the officer's requests.  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). To determine whether an encounter between an officer and a citizen constitutes a seizure, the Sixth Circuit has recognized that words alone may be enough to make a reasonable person feel that he would not be free to leave.  *See United States v. Buchanon*, 72 F.3d 1217, 1223 (6th Cir. 1995) (quoting *Mendenhall*, 446 U.S. at 554).

33

Defendants all characterize their interaction with Kevin and Sonya as voluntary once everyone was outside the basement. [DE 68-1 at 1803–804; DE 69-1 at 2157]. Sonya and Kevin do engage with Defendants for at least ten minutes regarding the circumstances surrounding Alex's arrest. [DE 68-1 at 1803–804 (providing a detailed account of Kevin and Sonya's conversation with Defendants)]. However, the totality of the circumstances indicate that Kevin and Sonya were likely seized. *See Mendenhall*, 446 U.S. at 554. While Defendants claim that no weapons were ever pointed at Kevin and Sonya [DE 68-1 at 1804; DE 69-1 at 2157], Wright did draw his taser and point it at Sonya only moments before leaving the basement, [DE 64 Basement Video at 1:08– 1:14]. Moreover, it is undisputed that there were multiple police officers present outside with Kevin and Sonya. The Sixth Circuit has held that "[c]ircumstances indicative of a seizure include 'the threatening presence of several officers [and] the display of a weapon by an officer[.]'" *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (quoting *Mendenhall*, 446 U.S. at 554).

Additionally, audio collected by the Dashcam Video proves that one of the Defendants tells Kevin and Sonya to wait by the police cruisers. [DE 64 Dashcam Video 24:40–24:45]. He offers to let Kevin and Sonya sit on the hood of the vehicle while he confers with the other Defendants and their superior. [*Id.*]. The Sixth Circuit, in *United States v. Richardson*, held that a seizure occurred under similar circumstances. *See* 385 F.3d 625, 630 (6th Cir. 2004). A police officer had issued a citation during a traffic stop and shook the person's hand. *See id.* The officer then said, "Okay, just hang out right here for me, okay?" *Id.* The Sixth Circuit held that the officer's words, regardless of demeanor, were enough to constitute a seizure. *See id.* The Court finds, based on the totality of the circumstances, that a reasonable person would not feel free to leave if they were placed in Kevin's and Sonya's situation. *Mendenhall*, 446 U.S. at 554. Therefore, a seizure occurred and the protections of the Fourth Amendment vested. *See O'Malley*, 652 F.3d at 668.

34

Because the Sixth Circuit case law is clear that a seizure occurred, Kevin and Sonya were protected by a clearly established right for purposes of qualified immunity. *Pearson*, 555 U.S. at 232.

### 2. Whether the Seizure was Reasonable

Since the Court has found that Kevin and Sonya were seized, Defendants contend that the seizure was reasonable. [DE 68-1 at 1805; DE 69-1 at 2156–57]. The Fourth Amendment secures freedom from "unreasonable searches and seizures." When an officer has a "reasonable suspicion" of criminal activity, *Terry*, 392 U.S. at 30–31, "the officer may conduct a limited seizure and briefly detain a person for investigative purposes." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008). Reasonable suspicion "requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *Smoak,* 460 F.3d at 778–79. "Moreover, '[t]he scope of activities during an investigatory stop must reasonably be related to the circumstances that initially justified the stop.'" *Id*. at 779 (quoting *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991)). To determine whether a seizure was reasonable, the Court must evaluate the totality of the circumstances. *See id.* at 780.

As detailed above, Kevin and Sonya continually engaged Defendants during Alex's arrest. Kevin and Sonya remained within feet of officers and can be seen verbally engaging officers. [DE 64 Basement Video at 00:45–1:02]. Sonya lunged at officers on the ground and stood over Alex while Wright and Czartorski were performing the arrest. [*Id.* at 1:00–1:14]. After telling Kevin and Sonya to remain by the police cruiser, the Defendants can be heard discussing the arrest and whether Kevin or Sonya's conduct amounted to a crime. [DE 64 Dashcam Video 24:45–30:00]. Defendants eventually contact their supervisor to review the applicable state law and decide whether a crime has been committed. [*Id.*]. Based on the totality of the circumstances Defendants had "reasonable suspicion" to believe that Kevin and Sonya may have committed a crime. *See*

*Terry*, 392 U.S. at 30–31.  Defendants' investigation of Kevin and Sonya's suspected criminal activity was directly related to the circumstances that initially justified the stop—Kevin and Sonya's actions during Alex's arrest.  *Smoak,* 460 F.3d at 779.

Kevin and Sonya argue that as Alex's parents they were protected from prosecution for hindering arrest.  [DE 66 at 1524–25].  Kentucky law does provide an affirmative defense for parents who hinder the prosecution of their child.  *See* KRS 520.110(2) ("In any prosecution for hindering prosecution or apprehension it is a defense that the accused is the spouse, parent, child, brother, sister, grandparent or grandchild of the person whose discovery or apprehension he sought to prevent.").  Plaintiffs cite case law indicating "that a peace officer, in assessing probable cause to effect an arrest, may not ignore information known to him which proves that the suspect is protected by an affirmative legal justification for his suspected criminal actions."  *Painter v. Robertson*, 185 F.3d 557, 571 (6th Cir. 1999).  However, in *Painter*, the Sixth Circuit ultimately held that the police officer at issue was unaware that the suspect was protected by state law.  *See id.*  Therefore, reasonable suspicion existed based on the officer's limited information.  *See id.* at 572.  Similarly, there is no indication, and Plaintiffs have cited no evidence, that any of the Defendants knew Kevin and Sonya were protected by an affirmative defense under state law.  Kevin and Sonya's seizure did not violate the Fourth Amendment since Defendants had reasonable suspicion to believe Kevin and Sonya committed a crime and were unaware of any defenses.  *See Dorsey*, 517 F.3d at 395.  Although Kevin and Sonya had a clearly established right under the Fourth Amendment, this right was not violated.  Therefore, Defendants are covered by qualified immunity.  *Pearson*, 555 U.S. at 236.  Because Kevin and Sonya's detention did not violate the Fourth Amendment and because Defendants are covered by qualified immunity, the Court **GRANTS** Wrights and Dreisbach's Motion for Summary Judgment [DE 69-1], **GRANTS**

Czartorski's Motion for Summary Judgment [DE 68-1], and **DENIES** Plaintiffs' Motion for Summary Judgment [DE 66] based on Kevin and Sonya's Fourth Amendment seizure claims.

## VI.   FOURTH AND FOURTEENTH AMENDMENT EXCESSIVE FORCE CLAIMS

Alex claims that Wright and Czartorski violated his Fourth Amendment right to be free from the use of excessive force.  [DE 66 at 1525].  Wright and Czartorski both argue that their actions were covered by qualified immunity.  [DE 68-1 at 1792; DE 69-1 at 2141].

### A.  Constitutional Violation

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 490 U.S. at 394.  Generally, "[t]he Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens . . . while the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons," and the Fourteenth Amendment bars excessive force when neither category applies. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citations omitted).

A claim of excessive force in "an arrest, investigatory stop, or other 'seizure'" is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 388. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. The court must pay "careful attention to the facts and circumstances of each particular case," *id.*, and "consider the difficulties of modern police work," *Smith v. Freland*, 954 F.2d 343, 346 (6th Cir. 1992), when evaluating whether an officer acted reasonably during an arrest.  A court must consider the totality of the circumstances when evaluating the objective

37

reasonableness of the arrest.  *Smith v. City of Troy, Ohio*, 874 F.3d 938, 943 (6th Cir. 2017).   Three important, non-exhaustive factors guide this analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (citing *Graham*, 490 U.S. at 396).

### 1. Severity of the Crime at Issue

The first factor—the severity of the crime at issue—weighs in Alex's favor.  It is undisputed that officers were executing an arrest warrant because Alex failed to appear failed to appear in Jefferson District Court.  [DE 66 at 1507; DE 69-1 at 2142].  A reasonable jury could conclude that failure to appear is not a "serious" crime when determining whether an officer used excessive force during an arrest.  *See Goodwin v. City of Painesville*, 781 F.3d 314, 322 (6th Cir. 2015) (holding disorderly conduct was not a serious crime).

### 2. Immediate Threat to Safety

The Court will next consider whether Alex posed an immediate threat to the safety of the officers or others.  *See Shreve*, 453 F.3d at 687.  Unfortunately, Wright and Czartorski's testimony has already been proven to be inaccurate as it relates to Alex's arrest.  [DE 53-1 at 742].  Not only does Plaintiffs' expert note inaccuracies in Wright and Czartoski's testimony, but their testimony contradicts the Basement Video.  [*Id.*].  Therefore, the Court can only afford their testimony nominal weight for purposes of evaluating qualified immunity.  *See Harris*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").  When Wright confronted Alex in the basement and when he threw Alex to the ground, Alex, Kevin, and Sonya had not been checked for weapons nor does the video show any attempt to search Alex or pat him down for weapons.

[DE 69-1 at 2143].   Defendants also had not checked the basement for weapons that might be within Alex's reach.   [*Id.*].   It is clear from the Basement Video that that Plaintiffs' basement was poorly lit.   [DE 64 Basement Video at 00:45–1:02].   Additionally, Defendants reviewed Alex's criminal history report prior to the arrest, which included his status as a flight risk.   [DE 69-1 at 2142].   However, the Basement Video demonstrates that Kevin, Sonya, and Alex remained calm until Wright threw Alex to the ground.   [DE 64 Basement Video at 00:40–55].   At no point does Alex grab for a weapon or try to make physical contact with the Defendants.   [*Id.* at 00:45–1:02].   Viewing the evidence in the light most favorable to the Plaintiffs, the Court is unable to make a determination.   *See Shreve*, 743 F.3d at 134.   Therefore, this factor weighs in favor of neither party.

### 3.   *Resisting Arrest*

Finally, the Court considers whether Alex actively resisted arrest or attempted to flee.   *See id.*   The constitutional analysis turns on whether Alex was actively resisting as opposed to passively resisting or not resisting at all.   *See Goodwin*, 781 F.3d at 323 (citing *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012).   Active resistance can take the form of "verbal hostility" or "a deliberate act of defiance."   *Eldridge v. City of Warren*, 533 F. App'x 529, 534–35 (6th Cir. 2013).

Once in the basement, Wright and Czartorski give Alex conflicting commands to put his hands on the wall and to put his hands behind his back.   [DE 59 at 804, Alex Dep. Tr. 20:7–15].   Alex turned from the wall to face Wright and Czartorski.   [DE 64 Basement Video at 0:44–0:58].   Alex testified that he turned to face officers after being instructed to do so.   [DE 59 at 802, Alex Dep. Tr. 18:11–18].   Alex then turned back to the wall attempting to obey their commands.   [*Id.*; DE 64 Basement Video at 0:44–0:58].   Alex testified that there was a general sense of confusion in the room during his arrest.   [DE 59 at 803, Alex Dep. Tr. 19:1–4].   Czartorski can be seen

standing beside Alex before Wright takes Alex to the ground.  [DE 64 Basement Video at 0:44–0:58].

There is no evidence from the video that Alex was defying Defendants' commands.  [*Id.*].  Without audio and trustworthy testimony from officers on the scene, the Court cannot conclude that Alex was actively defying Wright and Czartorski's orders.  Alex testified that he was complying with Wright and Czartorski's orders when Wright threw him to the ground.  [DE 59 at 805–806, Alex Dep. Tr. 21:16–22:2.]  Kevin and Sonya also provided supporting testimony that Alex was not resisting arrest.  [DE 60 at 947, Sonya Dep. Tr. 42:16–23 ("[T]hat's when he got taken down and slammed and crap beat out of him for no reason."); DE 61 at 1049–50, Kevin Dep. Tr. 27:18–28:1 ("You can look at [Sonya] and myself, we're astonished, what are you doing?  He's cooperating.")].  Testimony from Wright and Czartorski's has already proven to be untrustworthy based on the Basement Video.  Therefore, viewing the evidence in the light most favorable to the Plaintiffs, see *Shreve*, 743 F.3d at 134, the Court cannot conclude that Alex was resisting arrest. *See Eldridge*, 533 F. App'x at 534–35.  Instead, a reasonable fact finder could conclude, based on testimony from Plaintiffs, which is not contradicted by video evidence, that Alex was not resisting arrest.

After Alex is taken to the ground, Alex lands on his side.  [DE 64 Basement Video at 1:00–1:03].  Wright struck Alex in the back twice with his elbow.  [*Id.* at 1:03–1:07].  Until this point, Czartorski had not applied any force on Alex.  [*Id.* at 0:45–1:00].  After forcing Alex to the ground, Alex quickly complied with Wright's commands and laid on his stomach.  [*Id.* at 1:03–1:07].  At this point, Alex lays still while Wright secures his hands.  [*Id.*]  Once Wright takes Alex to the ground, Czartorski quickly moves Kevin and Sonya back from Alex.  [*Id.* at 0:59–1:07].  Czartorski then delivers three quick strikes to Alex's legs with his flashlight.  [*Id.*].  Alex appears

to have landed on his hands and was unable to fully lay on his stomach before Czartorski began hitting him with the flashlight. [*Id.*]. Czartorski then stands up to wave back Sonya and Kevin. [*Id.*] He then kneels back down to deliver a fourth strike to Alex's legs with his flashlight. [*Id.* at 1:04–1:08]. At this point, the video clearly depicts Alex's hands out from under his body and Wright placing Alex's hands behind his back. [*Id.*]. Czartorski does not deliver any additional force to Alex after the fourth strike with his flashlight.

Again, there is no evidence from the video that Alex was defying Defendants' commands or actively resisting arrest. [*Id.* at 0:59–1:08]. Without audio and trustworthy testimony from Defendants, the Court is unable to determine that Alex was actively defying Wright and Czartorski. Moreover, both parties have put forth expert to support their cases. Plaintiffs' expert report opines that Czartorski and Wright violated Kentucky State Police general orders on the use of force. [DE 53-1 at 743]. Plaintiff's expert further opines that Czartorski and Wright's use of force was unreasonable and violated industry standards. [*Id.* at 741]. Defendants' expert report, however, opines that Czartorski's conduct was within the bounds of industry standards and that the force he used on Alex was not excessive. [DE 52-1 at 712–13]. Defendants' expert does, however, form his opinion "[i]n the light most favorable to Trooper Czartorski" [*id.* at 725], which is not the legal standard. *See Shreve*, 743 F.3d at 134 (holding evidence must be viewed in the light most favorable to the plaintiff). With conflicting evidence before the Court, and viewing the evidence in the light most favorable to Plaintiffs, the Court finds that the third factor weighs in favor of the Plaintiffs.

After reviewing the totality of the circumstances, *Graham*, 490 U.S. at 396, Plaintiffs have satisfied their burden to prove a constitutional violation that would deprive Wright and Czartorski of qualified immunity. *See Gardenhire*, 205 F.3d at 311. The Court found that the seriousness of Alex's crime was minor. *See Goodwin*, 781 F.3d at 322. Although the second factor weighed in

favor of neither party, the Court did find that Alex was not resisting arrest. The Court does not have audio from the arrest or reliable testimony from Defendants. The Court does have testimony from all three Plaintiffs indicating that Alex never resisted arrest. [DE 59 at 805–806, Alex Dep. Tr. 21:16–22:2; DE 60 at 947, Sonya Dep. Tr. 42:16–23; DE 61 at 1049–50, Kevin Dep. Tr. 27:18–28:1]. This testimony does not directly contradict the Basement Video, which recorded the arrest. The Court must assess objective reasonableness, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See Goodwin*, 781 F.3d at 322. However, viewing the evidence in the light most favorable to the plaintiff, it is unlikely that Wright and Czartorski's actions were objectively reasonable. Because Alex has presented facts sufficient to allege a violation of the Fourth Amendment, see *Pearson*, 555 U.S. at 232, the Court must now analyze whether Wright and Czartorski violated a clearly established right.

### B. Clearly Established Right

Even if an official's behavior violates the Constitution, however, qualified immunity applies unless the official's conduct violates a clearly established right. *Pearson*, 555 U.S. at 232. The official's conduct violates clearly established right "when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear'" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Creighton*, 483 U.S. at 640). A case directly on point is not required. *Id*. Instead, existing precedent must place the constitutional question beyond debate. *Id*. "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citation omitted).[5]

---

[5] The Supreme Court has recognized "that officials can still be on notice that their conduct violates established law even in novel factual circumstances" and has "rejected a requirement that previous cases be 'fundamentally similar'" to the facts in a case to render qualified immunity inapplicable. *Hope v. Pelzer*,

In examining "existing precedent," the Court looks "first to decisions of the Supreme Court," then to Sixth Circuit cases and "decisions of other courts within the circuit, and then to decisions of other Courts of Appeal." *Andrews v. Hickman Cnty*., 700 F.3d 845, 853 (6th Cir. 2012).  Although the conduct at issue in those cases need not be identical, the legal precedent "must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion" that the conduct is unlawful.  *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012).

In evaluating whether a right is clearly established, courts cannot "define clearly established law at a high level of generality."  *al-Kidd*, 563 U.S. at 742.  Instead, "[t]he 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him."  *Dist. of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018).  The officer's conduct must be unlawful not in the abstract but "in the situation he confronted."  *Id.*  Of course, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is clear enough even though existing precedent does not address similar circumstances.  *Id*. (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).  Thus, "[w]hether a defendant is protected by qualified immunity turns not on whether the defendant was on notice that his actions satisfied the elements of a particular cause of action, but instead on whether the defendant was on notice that his actions violated the laws of the United States."  *Jackson v. City of Cleveland*, 920 F.3d 340, 372 (6th Cir. 2019); *see also Miller v. Maddox*, 866 F.3d 386, 395 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 2622 (2018); *Spurlock*, 167 F.3d at 1005–06 (finding that a right was clearly

---

536 U.S. 730, 741 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 263 (1997)).  As noted, however, the Court has more recently held that plaintiffs must identify existing precedent that places the legal question "beyond debate" to "every" reasonable officer, *al-Kidd*, 563 U.S. at 741, and has since appeared committed to that more-stringent standard.  *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).

established even though that right was previously analyzed under the Fourteenth Amendment but was now properly analyzed under the Fourth Amendment).

The Sixth Circuit has "held that 'the right to be free from physical force when one is not resisting the police is a clearly established right.'" *Goodwin*, 781 F.3d at 328 (quoting *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)). Moreover, courts in the Sixth Circuit have repeatedly held that the use of additional force on a suspect after he has been neutralized is unreasonable. *See, e.g.*, *Baker*, 471 F.3d at 607; *Shreve*, 453 F.3d at 687; *Champion*, 380 F.3d at 902 (citing cases); *see also Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental interest in continuing to beat [plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was."). Citizens who no longer pose a safety risk to officers during an arrest have a right to be free from "gratuitous violence." *Shreve*, 453 F.3d at 688; *see also McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[O]ur court has repeatedly found that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line.").

Based on the law of the Sixth Circuit, Alex was free from additional force because he likely did not resist arrest. *Wysong*, 260 F. App'x at 856. First, Alex had a clearly established right to be free from excessive force when Wright threw him to the ground. *See Smoak,* 460 F.3d at 784 (law clearly established that tackling subdued suspect would have been unreasonable). Once Alex was on the ground, Wright struck Alex in the back with his elbow. [DE 64 Basement Video at 1:03–1:07]. Czartorski also struck Alex four times with his flashlight. *Id.* at 1:03–1:08. The Sixth Circuit has articulated a legal principle that clearly prohibited these additional strikes under the circumstances. *See Wesby*, 138 S.Ct. at 590. Because there is significant case law supporting Alex's right to be free from gratuitous strikes to the body, Wright and Czartorski violated a clearly established right when they struck Alex while he was on the ground. *Baker*, 471 F.3d at 608.

Because a reasonable jury could find that Wright and Czartorski violated Alex's clearly established Fourth Amendment right to be free from excessive force, the Court **DENIES** Czartorski's Motion for Summary Judgment [DE 68-1], **DENIES** Wright's Motion for Summary Judgment [69-1], and **DENIES** Plaintiffs' Motion for Summary Judgment [DE 66] as they apply to Alex's Fourth Amendment claims for excessive force claims.

## VII.    <u>FAILURE TO INTERVENE</u>

Wright and Dreisbach moved to dismiss Plaintiffs' claim for failure to intervene against Wright.  [DE 69-1 at 2159].  In response, Kevin and Sonya argue that all three Defendants are liable for failure to intervene.  [DE 76 at 3642].  The Court will determine the scope of Kevin and Sonya's claim for failure to intervene before addressing its merits.

### A.   Scope Kevin and Sonya's Claim for Failure to Intervene

Wright and Dreisbach argue that Kevin's and Sonya's claim for failure to intervene extends only to Wright based on the language of the Complaint.  [DE 69-1 at 2159].  However, Kevin and Sonya assert all Defendants are liable.  [DE 76 at 3642; DE 77 at 3675].  The Complaint alleges "Defendant [Wright] is equally liable, because of his inaction he failed to perform a duty to enforce the laws equally and fairly, and thereby denied equal protection to persons legitimately exercising rights guaranteed them under state or federal law."  [DE 40 at 650].

Defendants are entitled to "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Once a case has progressed to the summary judgment stage, the liberal pleading standards available at the motion to dismiss phase are no longer available.  *See Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 787–88 (6th Cir. 2005).  "[A] plaintiff may not expand his claims to assert new theories for the first time in response to a

summary judgment motion." *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (quoting *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).

Kevin and Sonya's Complaint asserts a claim for failure to intervene against Dreisbach, but the Court interprets this clear mistake as a claim against Wright. [DE 40 at 650]. Interpreting the Complaint to assert a claim for failure to intervene against all Defendants would not give fair notice to Dreisbach or Czartorski. *See Twombly*, 550 U.S. at 555. The Court cannot broadly interpret the Complaint to encompass claims against Dreisbach and Czartorski at the summary judgment stage. *See Tucker*, 407 F.3d 787–88. Kevin and Sonya first asserted a claim for failure to intervene against Dreisbach and Czartorski in their response to Defendants' motions for summary judgment. [DE 76 at 3642; DE 77 at 3675]. However, the Sixth Circuit has expressly forbidden parties from expanding their claims in this way. *See Desparois*, 455 F. App'x at 666. Therefore, Kevin and Sonya's claim for failure to intervene will be limited to a claim against Wright, which was articulated in the Complaint.

### B. Wright's Failure to Intervene

Kevin and Sonya's claim for failure to intervene relate to their claims for First Amendment Retaliation and Fourth Amendment search and seizure. [DE 40 at 650]. The Sixth Circuit has held that

> [a]n officer who fails to intervene is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official.

*Bunkley v. City of Detroit, Michigan*, 902 F.3d 552, 565–66 (6th Cir. 2018) (citing *Kaylor v. Rankin*, 356 F. Supp. 2d 839, 850 (N.D. Ohio 2005)). "To be liable, an officer must have had a

realistic opportunity to intervene to prevent the harm from occurring." *Id* at 566. The question of whether an officer was capable of intervening is a question of fact for the jury. *Id.*

Because the Court has already dismissed the Kevin and Sonya's claims for First Amendment retaliation and violation of the Fourth Amendment as it related to Kevin and Sonya's seizure, the Court will not analyze these under a theory of failure to intervene. Without a constitutional violation, there can be no cause of action for failure to intervene. *See id.* at 565–66. However, the Court will analyze Kevin and Sonya's claim for failure to intervene based on the potential Fourth Amendment violation for seizing and deleting Kevin's cell phone video of Alex's arrest.

As explained above, a reasonable jury could find that Wright or Dreisbach meaningfully interfered with Kevin's possessory interest in his recording, which would amount to a violation of the Fourth Amendment. *Hensley*, 693 F.3d at 688. However, due to conflicting testimony regarding the deletion of Kevin's recording [DE 66 at 1514, 1517–18; DE 69-1 at 2161], this remains a question for the finder of fact. If a jury were to find that Dreisbach committed a constitutional violation, then Wright could also be held liable for failing to intervene. *See Bunkley*, 902 F.3d at 565–66. Consequently, whether Wright had an opportunity to intervene and stop any potential constitutional violation is also a question for the finder of fact. *See id.* at 566. Therefore, the Court **DENIES IN PART** Wright and Dreisbach's Motion for Summary Judgment [DE 69-1] as it relates to Wright's liability for failure to intervene in the deletion of Kevin's recording and **GRANTS IN PART** Wright and Dreisbach's Motion for Summary Judgment [DE 69-1] as it relates to additional liability asserted by Plaintiffs for failure to intervene.

## VIII.   <u>CONCLUSION</u>

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.      Plaintiffs' Motion to Exclude Defendants' Expert [DE 65] is **GRANTED IN PART** regarding Gaut's testimony on failure-to-train liability and his testimony articulating legal standards under *Graham* and applicable case law.  Within ten (10) days of this Order, Defendants **shall provide**, to Plaintiffs, an updated case list for Gaut that includes "*all* other cases in which, during the previous 4 years, [he has] testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v) (emphasis added).  Further, Defendants **shall make** Gaut available for a second deposition, within twenty (20) days of its disclosure of Gaut's updated list, with the limited scope of discussion of any newly disclosed cases.  Plaintiffs' Motion to Exclude Defendants' Expert [DE 65] is **DENIED IN PART** on all other grounds.

2.      Defendants' Motion to Exclude Plaintiffs' Expert [DE 67-1] is **GRANTED IN PART** regarding Janota's testimony that Defendants committed perjury and his testimony concluding that Kevin's constitutional rights were violated and **DENIED IN PART** on all other grounds.

3.      Plaintiffs' Motion for Summary Judgment [DE 66] is **DENIED**;

4.      Wrights and Dreisbach's Motion for Summary Judgment [DE 69-1] is **GRANTED** as it applies to Kevin and Sonya's First Amendment claims;

5.      Czartorski's Motion for Summary Judgment [DE 68-1] is **GRANTED** as it applies to Kevin and Sonya's First Amendment claims;

6.      Wright and Dreisbach's Motion for Summary Judgment [DE 69-1] is **DENIED** as it relates to Kevin and Sonya's Fourth Amendment claim for deleting Kevin's recording;

7.      Wright and Dreisbach's Motion for Summary Judgment [DE 69-1] is **GRANTED** as it relates to Kevin and Sonya's Fourth Amendment seizure claims;

8.      Czartorski's Motion for Summary Judgment [DE 68-1] is **GRANTED** as it relates to Kevin and Sonya's Fourth Amendment seizure claims;

9.      Wright's Motion for Summary Judgment [DE 69-1] is **DENIED** as it relates to Alex's Fourth Amendment excessive force claims;

10.     Czartorski's Motion for Summary Judgment [DE 68-1] is **DENIED** as it applies to Alex's Fourth Amendment excessive force claims;

11.     Wright and Dreisbach's Motion for Summary Judgment [DE 69-1] is **DENIED IN PART** as it relates to Wright's liability for failure to intervene in the deletion of Kevin's recording and **GRANTED IN PART** as it relates to additional liability asserted by Plaintiffs for failure to intervene.

Rebecca Grady Jennings, District Judge

United States District Court

August 3, 2022

cc:     Counsel of record

49